The Board of Commissioners of Vermillion County *v.* Chipps, Adm'r.

## No. 14,722.

# THE BOARD OF COMMISSIONERS OF VERMILLION COUNTY *v.* CHIPPS, ADMINISTRATOR.

PRACTICE.—*Testing Complaint for First Time on Appeal.*—*Rule as to.*—Where the sufficiency of a complaint is questioned for the first time in the Supreme Court by assignment of error, it will withstand such attack if it be sufficient to bar another action for the same cause, and would be good after verdict.

SAME.—*Sustaining Demurrer to Good Paragraph.*—*Facts Provable Under General Denial.*—It is not error to sustain a demurrer to a good paragraph of answer if all the matters therein averred are admissible in evidence under the general denial, which is pleaded.

BRIDGES,—*Neglect in Constructing or Repairing.*—*County Liable.*—A county is liable for a failure to exercise reasonable care in the construction of its bridges, or to exercise reasonable care in keeping them in repair.

SAME.—*Counties not Insurers.*—*Anticipating New or Unusual Use of.*—Counties are not insurers of the safety of their bridges, nor are they bound, when constructing them, to anticipate uses not then known, and necessities which are not within ordinary experience.

SAME.—*Repairing.*—*Sufficiency of.*—In repairing bridges counties have performed their whole legal duty when they have put them in as good a condition of strength and soundness as will make them as secure as new bridges of the same kind and plan.

SAME.—*Latent Defects.*—In the construction of a bridge a county is not liable for latent defects, which could not have been discovered by the use of reasonable diligence in the material used ; and it is only bound to use ordinary or reasonable care to make the structure safe for the uses for which it was intended.

SAME.—*Employing Suitable Person to Examine and Repair.*—*County not Liable for His Error.*—If a county employ a competent person to examine and repair a bridge, and he makes the examination and repairs it, and reports that it is sufficient, the county is not liable if his judgment as to the sufficiency of the bridge was erroneous.

SAME.—*Ordinary Use of Bridge.*—*Plaintiff Must Show He was so Using.*—In order to recover damages caused by a bridge breaking down, the plaintiff must show that at the time of the accident he was using the bridge in the ordinary and usual manner in which *that* bridge was, had been, and was intended to be used ; and if he was not travelling in the usual and ordinary way in that vicinity he can not recover.

SAME.—*Extraordinary Use.*—One who uses a bridge in an unusual manner or subjects it to an unusual or extraordinary load or strain, and is thereby injured, can not recover damages for such injury.

SAME.—*Proof of Use of Bridges for Traction Engine.*—In an action for an injury caused by a county bridge breaking down by reason of running a heavy traction engine upon it, it is error to allow the plaintiff to prove that traction engines had passed over other highways and bridges in the county, if the bridge broken down had been constructed several years before traction engines were known or used.

NEGLIGENCE.—*When Question of Law for the Court.*—Where the facts are undisputed, and can lead to only one conclusion, the question of negligence is a question of law for the court.

McBRIDE, J., dissents.

From the Fountain Circuit Court.

*M. G. Rhoads* and *I. F. Davidson*, for appellant.

*H. H. Conley, J. C. Sawyer* and *H. H. Dochterman*, for appellee.

COFFEY, J.—The complaint in this case alleges that the appellee is the duly appointed and qualified administrator of the estate of Robert Baker, deceased ; that, on the 20th day of July, 1887, there was a bridge in Vermillion county which had prior thereto been constructed by said county, and which it was bound to maintain ; that it had negligently constructed said bridge by placing therein weak, knotty and defective timbers, leaving it in an unsafe condition, and that it had negligently accepted said. bridge, from the contractor who built the same, in an unsafe condition for passengers, by reason of the weak, knotty and defective pine timbers placed therein, while the contract and specifications for said bridge provided that the same should be constructed in a good, substantial, workmanlike manner, of poplar timber; that it had negligently suffered said bridge to remain in such unsafe condition, and to become out of repair, so that on the 20th day of July, 1887, the joists and other timbers upon which the floor of said bridge was laid were defective, weak, brittle, knotty, old, decayed and rotten, so that it was dangerous for persons to pass over the same in the ordinary use of said highway, of which the county had notice ; that on that day the deceased, Robert Baker, not knowing the defective, decayed and dangerous condition of the bridge, but having reason to

believe it was in good repair and in safe condition, attempted to pass over the same with a portable traction engine used for threshing grain, and by reason of the defective, decayed and dangerous condition of the bridge, caused by the failure and neglect of the board of commissioners of the county to properly construct and keep the same in repair, and without any fault on the part of the deceased, the bridge gave way and precipitated the deceased and said engine into the stream below, a distance of sixteen feet, whereby he was, without any fault on his part, stunned, bruised and scalded, from the effects of which he died; that he left a widow and two children, who were dependent upon him for support.

To this complaint the appellant filed an answer in two paragraphs:

*First.* The general denial.

*Second.* Alleging contributory negligence.

The court sustained a demurrer to the second paragraph of the answer, to which appellant excepted.

A trial by jury resulted in a general verdict for the appellee. The jury also returned answers to interrogatories with their general verdict.

Over a motion for new trial the court rendered judgment on the general verdict for the appellee.

Several reasons for a reversal of the judgment of the circuit court are urged here, which will be considered in the order in which they are presented by counsel for appellant.

*First.* It is contended that the complaint above referred to does not state facts sufficient to constitute a cause of action.

The sufficiency of the complaint is questioned for the first time in this court by an assignment of error.

It is settled that where the sufficiency of a complaint is questioned for the first time in this court by assignment of error, it will withstand such attack if it be sufficient to bar another action for the same cause, and would be good after verdict. *Du Souchet* v. *Dutcher*, 113 Ind. 249; *Orton* v. *Tilden*, 110 Ind. 131; *Hornady* v. *Shields*, 119 Ind. 201.

In the case of *Board, etc.,* v. *Montgomery,* 109 Ind. 69, it was said by this court: "The liability of counties for negligence in constructing or maintaining bridges is no longer an open question in this State, for there are many cases declaring that they are liable."

The complaint before us sufficiently alleges the negligence of the county, both in constructing and maintaining the bridge therein described, and contains the necessary allegation that the deceased was without fault.

It is conceded by the appellant's counsel that ordinarily this would be sufficient, but it is insisted that it *is* not sufficient under the rule announced in the case of *City of Wabash* v. *Carver,* 129 Ind. 552.

In that case a rehearing was granted, and upon a reconsideration of the question it was held that the complaint in that case stated a cause of action. We think the complaint in this case is also sufficient.

The court committed no available error in sustaining a demurrer to the second paragraph of the appellant's answer, as all the matters therein averred were admissible in evidence under the general denial, which was pleaded. *Board, etc.,* v. *Legg,* 110 Ind. 479; *Haywood* v. *Hedrick,* 94 Ind. 340; *Becknell* v. *Becknell,* 110 Ind. 42.

The facts in the case, as they are disclosed by the evidence, are that the bridge mentioned in the complaint is a covered bridge, about thirty feet in length, and was constructed in the year 1869. For at least ten years after its construction traction engines were not used in Vermillion county, where the bridge is situated, but for the period of four or five years prior to July, 1887, they had been in general use. On the 20th day of July, 1887, the appellee's intestate attempted to cross the bridge with a traction engine weighing eight thousand six hundred pounds, when the bridge gave way, and he was thereby killed.

The evidence tends to show that six thousand pounds was

the, heaviest loads to which bridges in that neighborhood were subject at the time this one was constructed.

The bridge in question was constructed by one Daniels, an expert bridge builder, under plans and specifications furnished by the county.

The evidence tended to prove that some of the timbers which gave way were knotty and brittle, and had begun to decay.

One Britton, an expert, called as a witness by the appellee, testified that the defects in these timbers were original defects, the timber being unfit for use as bridge timber by reason of its knotty and brash condition, while Daniels, an expert, called by the appellant, and the person who constructed the bridge, testified that the timber was good and was suitable for the construction of a good and safe bridge, and was such as was put in all bridges at the time this was constructed, and that he inspected and accepted the timber, believing it to be suitable for the purpose intended.

Two or three weeks prior to the accident above mentioned the trustee of the township in which the bridge is situated employed a carpenter, of twenty-four years' experience, to examine the bridge, and make a careful inspection of its timbers, and put the same in good repair, which he, in connection with the supervisor, proceeded to do. He put in some new timbers, and, after inspection, pronounced the other sound and safe, and supplied the bridge with a new floor.

On the trial of the cause the court, over the objection and exception of the appellant, permitted the appellee to prove that in other parts of the county, and on other highways than the one in controversy, traction engines were common, and that it was customary for them to cross the bridges on such highways.

The decided weight of authority is that, in the absence of a statute upon the subject, a county is not liable for a failure to keep its bridges in repair. Elliott Roads and Streets, p. 42.

The reason given, in most of the adjudicated cases, for holding that counties are not liable in such cases is that, as the State would not be liable, it is unreasonable to hold that a public corporation, such as a county, which is a mere governmental instrumentality, should be held liable. But whether this reason is valid or otherwise, we need not stop to inquire, for it is now firmly settled in this State that a county is liable for a failure to exercise reasonable care in the construction of its bridges, or to exercise reasonable care in keeping such bridges in repair.

Counties are not insurers, however, of the safety of their bridges, nor are they bound, when constructing them, to anticipate uses not then known, and necessities which are not within ordinary experience. So, in repairing, they have performed their whole legal duty when they have put them in as good a condition of strength and soundness as will make them as secure as new bridges of the same kind and plan. *Fulton, etc., Works* v. *Kimball Tp.*, 52 Mich. 146 ; *Medina Tp.* v. *Perkins,* 48 Mich. 67 ; *McCormick* v. *Washington Tp.*, 112 Pa. St. 185 ; *Board, etc.,* v. *Pearson,* 120 Ind. 426.

In the case of *Board, etc.,* v. *Pearson, supra,* it was said by this court: "A corporation charged with the duty of keeping a bridge in repair must select the proper means and persons to do the work, if by the exercise of ordinary care such a selection can be made. If, however, ordinary care is used in selecting suitable persons, and in requiring the persons selected to exercise their skill with reasonable prudence and diligence, the bridge still remains unsafe, there will be no liability."

The first question presented for our consideration under the facts above stated is this, was the board of commissioners guilty of negligence in accepting the bridge, mentioned in the complaint, at the time of its construction ?

If the question as to whether some of the timbers used in the bridge were defective was the only question involved, we could not disturb the verdict on the evidence, for we will not

weigh conflicting testimony; but the question in the case is not alone as to whether the timber was defective, but the further question exists as to whether the defect was of such a character as to charge the county with negligence in accepting a bridge containing such timber.

In the construction of bridges the county is not liable for latent defects, which could not have been discovered by the use of reasonable diligence, in the material used, and it is only bound to use ordinary or reasonable care to make the structure safe for the uses for which it was intended. *McCormick* v. *Washington Tp., supra.*

The case last cited was a case where a bridge gave way by reason of defective timber, under the weight of a traction engine, and the court instructed the jury as follows : " If the jury believe that the supervisors, or those in their employment, when rebuilding the bridge in July or August of 1883, tested the alleged defective chord or stringer by cutting into it with an ax, or in any other manner, as an ordinarily prudent man would do under the same circumstances, they performed their duty, and negligence can not be inferred because of a mistake made in the performance of such duty." The Supreme Court of Pennsylvania held this instruction to be a correct exposition of the law.

In the case of *Medina Tp.* v. *Perkins, supra,* where a bridge gave way by reason of defective timber, under the weight of a portable engine, the Supreme Court of Michigan, in discussing the question as to the duty of the township officers in relation to bridges, said : " The law will not impose an impracticable rule of duty. Township officers are not expected to be experts, nor learned engineers, nor persons liberally instructed in mechanics, nor individuals equipped with the resources of experienced specialists; and nothing more can be demanded of them than reasonable intelligence and ordinary care and prudence. And no duty is enjoined on the township to keep informed of the condition of its bridges

The Board of Commissioners of Vermillion County *v.* Chipps, Adm'r.

that may be taken as being above the capacity of its own officers."

In this case no complaint is made of the plan of the bridge. The county employed a skilled and competent person to construct it according to the plans and specifications. Such skilled person inspected and received the timber which entered into its construction, and testifies that in his opinion they were suitable for the purpose for which they were used. He further testified that such timbers were used at the time the bridge was built by all persons of competent skill. It is not denied or disputed that the expert employed by the county to construct this bridge honestly believed the timbers used by him, after inspection, to be suitable bridge timbers. Is it to be said that the officers of the county, who are not presumed to be experts, are guilty of negligence in accepting a bridge containing timbers which an expert did honestly believe sufficient?

The timbers of which complaint is now made did, in fact, prove to be sufficient to bear up all ordinary loads to which they were subjected for a period of eighteen years.

In view of these facts, we are of the opinion that the evidence in the cause does not make a case of negligence against the county in accepting the bridge in question from the contractor. To hold otherwise would require of the board of commissioners something more than ordinary diligence, and would, in fact, make it the insurers of the safety of the county bridges.

Where the facts are undisputed and can lead to but one conclusion, the question of negligence is a question of law for the court. *Mann* v. *Belt R. R., etc., Co.,* 128 Ind. 138.

Nor do we think the evidence sustains the charge that the county was guilty of negligence in failing to keep the bridge in repair.

About two or three weeks prior to the accident we are now considering, the proper legal authority employed a competent person to examine the bridge and put the same in good

64          SUPREME COURT OF INDIANA,

The Board of Commissioners of Vermillion County *v.* Chipps, Adm'r.

repair. He proceeded to do so, and gave the timbers such examination as he deemed necessary to test their soundness, and did such other things as he thought necessary to make the bridge safe. If he made a mistake, the county can not be charged with negligence by reason of such mistake. The duty of the county was to exercise reasonable care in selecting a proper person to examine and repair the bridge, and to require of him the exercise of his skill, and if it did so, and the bridge still remained unsafe, the county was not liable. *Board, etc., v. Pearson, supra.*

As the legislative department of the State has determined that the removal of traction engines upon the public highways is a subject calling for the exercise of the police power, it may fairly be considered a question as to whether we are not bound to know that the use of the highways for that purpose is not usual and ordinary. Elliott's Supplement, section 347.

But, without stopping to inquire whether we are or are not bound to take such notice, we think the court erred in permitting the appellee to prove, on the trial of this cause, that it was usual and ordinary for traction engines to pass over other highways and bridges than the one in controversy. It did not tend to prove that the deceased, in using the bridge mentioned in the complaint, was using it in the usual and ordinary way.

In the case of *McCormick* v. *Washington Tp., supra,* it was held that in order to recover the plaintiff must show that at the time of the accident he was using the highway in the ordinary and usual manner in which *that* highway was, had been and was intended to be used, and if he was not travelling in the usual and ordinary way, in that vicinity, he was not entitled to recover.

As we have seen, this bridge was constructed at least ten years before traction engines came into use.

In the case of *Fulton, etc., Works* v. *Kimball Tp., supra,* in speaking of the subject of repairs, the Supreme Court of

Michigan said: " When it (the statute) requires repairs it may fairly be construed as requiring bridges to be put in as good a condition of strength and soundness as would make them as secure as new bridges of the same kind and plan. But it does not require a different structure."

The rule that one who uses a bridge in a manner not usual or ordinary, or subjects it to an unusual or extraordinary load or strain, and is thereby injured, can not recover damages for such injury, is well settled.

That the proof that traction engines had passed over other highways and bridges in the county was considered by the jury in this case as proof that the deceased was using the bridge in controversy in the ordinary and usual way, is made to appear by their answers to interrogatories, for they so find ; whereas there is no proof in the record that more than one engine had, prior to the injury complained of, passed over this bridge.

The fact that one engine passed over the bridge shortly before this accident does not make that the usual and ordinary mode of travel over it. The admission, therefore, of evidence that traction engines had passed over other highways and bridges in the county was not only error, but it was an error which resulted in an injury to the appellant.

For the errors above indicated the circuit court should have granted a new trial.

Judgment reversed, with directions to sustain the appellant's motion for a new trial in this cause.

McBride, J., dissents.

Filed Jan. 15, 1892; petition for a rehearing overruled April 1, 1892.