Williams, J.
The action below was brought under favor of the provision added to section 845, of the Revised Statutes, by the amendment of April 13, 1894, 91 O. L., 142. The material part of the section as thus amended, reads as follows: “The Board of Commissioners shall be capable of suing and being sued, pleading and being; impleaded in any court of judicature, and of bringing, maintaining and defending all suits, either in law or in equity, involving an injury to any public state or county road, bridge or ditch, drain or water course established by such board in their county, and for the prevention of injury to the same; and any such board of county commissioners shall be liable in their official capacity for any damages received by reason of the negligence or carelessness of said commissioners in keeping any such road or bridge in proper repair.” Though prior to that amendment, the public roads and bridges of the several counties were placed under the control of their respective boards of commissioners who were clothed with the necessary authority to keep them in repair, until its adoption there was no right of action against a county or its commissioners for damages *530 sustained by the failure to keep a road or bridge in repair. So that, the nature and grounds of the defendants’ liability must be gathered from this amended statute; and its construction in these respects is, in several particulars, involved in the questions presented in the case.
It is one of the claims of the plaintiff in error, that the action will not lie because no provision is made for raising’ the necessary fund with which to pay any damages that may be recovered. But, it does not necessarily follow from the absence of such provision that the action must fail. Satisfaction comes after judgment; and, that no present means exist of enforcing payment of a judgment, is not a valid objection to its recovery. Means may be afterwards provided. There appears to be general authority vested in the commissioners to raise funds by taxation for all county purposes; and that would seem to include the power to levy taxes for the satisfaction of judgments against the county for whose payment no other or special provision is made.
Another claim of the plaintiff in error, — one made on demurrer to the petition, is that, because the liability created by the statute is that of the commissioners in their official capacity, for their official neglect, redress must be sought by action on their official bonds, which are required in order to secure a faithful and diligent performance of their official duti.es; and furthermore, that as the negligence charged includes the defective construction of the bridge, which was built before the act was passed, the action is not maintainable against the Board of Commissioners as constituted when the injury complained of was sustained. The material fact, however, from which the liability for a defective *531 bridge arises, is the negligence of the commissioners in not keeping it in repair when the injury occurs; and the length of time the defect had continued before, or how it originated, are unimpor- ' tant except as tending to show knowledge of its existence. The negligent omission to make needed repairs on a bridge known to be out of repair, is, within the purview of the statute, a negligent failure to keep it in repair. And, the liability of the commissioners in their official capacity, is the liability of the county they represent, to the person injured by their culpable neglect. Whether, in the first instance, recovery might be had on their bonds, or, whether the county may have recourse to them for reimbursement of the damages paid by it, are questions not now before us, and upon which we express no opinion. We are satisfied that, in a proper case, the action may be maintained as this one was brought, directly against the Board of Commissioners in their official capacity.
Questions deemed of more practical importance in the report of the case arise upon the charge of the court and its refusal to charge as requested by the defendant. The jury were instructed, in substance, that the plaintiff was entitled to recover, in the absence of contributory negligence on the part of the deceased, if the defendant failed to have the bridge examined within a reasonable time after April 13, 1894 (when the amendment of the statute took effect), and, from defects in its construction, or want of repair, as alleged in the petition, it was, at the time of the accident that resulted in the decedent’s death, in an unsafe condition for the public use “in the way it was then being used.” And furthermore, it was a question for the- jury, “whether the bridge at the time of the accident *532 was in a reasonably safe condition for the use of the public in passing over it, in the way it was then being used.”
The effect of the charge was to hold the commissioners responsible if they failed to examine the bridge and put it in a condition of safety for the. use that was being made of it when it gave way, that is, for the safe passage over it of the traction engine and water tank on which the deceased was riding, although that may have been an unusual and unexpected use of the bridge, creating a burden of extraordinary weight. This is a different measure of responsibilitj- from that imposed by the statute. It enjoins on the commissioners no absolute duty to make examination of the bridges under their control, and to put them in a condition of safety for all possible emergencies. Their only liability is for such damages as result from their negligence with respect to keeping a bridge in repair. And, as no special standard of care is prescribed by Ihe statute, the degree required does not extend beyond that which reasonably prudent persons would ordinarily exercise in a like situation, in view of the purposes of the bridge, and the general uses which it should reasonably be expected would be made of it. The object of the law in requiring the maintenance of highway bridges undoubtedly was to make provision, in a reasonable way, for the safety, convenience, and accommodation of public travel in 'all usual and ordinary ways to which they are adapted. Such probable use of them the commissioners are bound to anticipate. And proper care on their part would require them to keep such bridges in suitable repair for those purposes. That is no more than is demanded in the exercise of ordinary care. But it would seem unreasonable *533 to require of the commissioners that they should anticipate and provide for some extraordinary use of a bridge that' would subject it to an unusual burden, — one not likely to be placed upon it in its common and general use. That would impose upon them the duty of extraordinary care, which the statute does- not exact. Accordingly, we find that when the question has been made in those states where local authorities are charged with the duty of maintaining ways and bridges, and made answerable in damages for their neglect to do so, it is held that a liability does not arise from neglect to keep a bridge in a safe condition for any unusual or extraordinary use, but only when there is a failure to keep it in repair for such use as is usual, ordinary and probable. In Gregory v. Adams, 14 Gray, 242, 248, which was an action against a town for damages for the loss of an elephant killed by the falling of a bridge that was out of repair while the elephant was being taken over it, Merrick, J. states the rule to be, that the public authorities in charge of bridges “are not required to make preparations for the safety or convenience of those who undertake to use those ways in an unusual or extraordinary manner, involving peculiar or special peril and danger, whether it be in respect to the kind or character of animals led or driven, or the magnitude or construction of carriages used, or the bulk or weight of property transported.” In Pennsylvania, where townships are liable in damages for failure to keep their bridges over streams in repair, in an action brought against a township by the owner of a threshing machine for damages done to it by the breaking down of a bridge over which it was being moved by a traction engine, it was held that: , ‘A township is not required to *534 assume that its bridges will be used in an unusual and extraordinary manner, either by crossing at great speed, or by the passing of a very large and unusual weight. As it does not anticipate any such use, it is not required to so build as to protect against injury resulting from such reckless conduct. Its liability stops with constructing and maintaining its bridges so as to protect against injury by a reasonable, proper, and probable use thereof, in view of the surrounding circumstances, such as the extent, kind, and nature of the travel and business on the road of which it forms a part.” McCormick v. Township of Washington, 112 Pa. St., 185. In that case instructions were affirmed, by which the jury were informed that the duty of the supervisors of the townships was “well performed if the bridge complained of was in a reasonably safe condition for travel in the ordinary modes in the neighborhood, and by the people who commonly used the bridge;” and, that they were not required “to make preparation for the safety or convenience of those who undertake to use the highway in an unusual and extraordinary manner, involving peculiar peril and danger by reason of the magnitude or construction of the carriages used, or the volume or weight of the property transported.” That case was followed in Commonwealth v. Allen, 148 Pa. St., 358, and Clulow v. McClelland, 151 Pa. St., 583. In Clapp v. Ellington, 58 N. Y. S. C. (51 Hun.) 58, where the facts were not substantially different from those in this case, it was held that: “While the commissioner of highways is required to construct and maintain bridges of sufficient strength and material to insure the safety óf persons passing over them with such vehicles as are commonly and ordinarily used in that county, he cannot be *535 required or expected to construct or maintain bridges which will insure the safety of persons passing over them in a manner involving peculiar and special danger arising from any unusual weight.” The doctrine of these cases has been maintained in Yordy v. Marshall County, 86 Iowa, 340, and other Iowa cases, and also in Commissioners v. Chipps, 131 Ind., 56, and other cases in that state.
From these authorities, as well as upon principle, it seems clear that in determining the liability of the defendant in this case, the controlling question is, whether the use that was being made of the bridge when Coffman received the injury which caused his death, was such usual and ordinary use of it as reasonably prudent persons in the situation of the commissioners and charged with their duties, would, in the exercise of ordinary care, in view of all the facts, have anticipated would be made of the bridge and would be attended with danger of injury resulting to persons, or property. If so, and the injury resulted from the failure of the commissioners to keep the bridge in repair, there was actionable negligence on their part. But not, if the use was of that unusual or extraordinary character involving peculiar danger which ordinary care did not require the defendant to anticipate and provide against. And that question, it is manifest, is one for the jury to determine from all the facts and circumstances of the ease. Not alone from the fact that the vehicle which was being moved over the bridge at the time was an engine and attachments weighing nearly five tons, to which the deceased added his own weight by riding upon it, and that it was propelled by steam power; though this could not be otherwise than important for the considera *536 tion of the jury. Such machinery and implements ha,ve come into use to some extent in some localities in threshing grain and other agricultural purposes, and are propelled by steam from place to place over the public highways, in the course of the business in which they are employed; and the extent to which that use of such machinery and that method of travel on the public roads and bridges had prevailed in that locality, if at all, before the occurrence, tog-ether with all the other pertinent facts shown by the evidence on the question, should be taken into consideration by the jury in determining whether that, at the time, had become a usual or ordinary method of travel and transportation in that locality, — -such as, at that time, ordinary care on the part of the commissioners should have anticipated and provided for, within the rule already stated. In Coulter v. Pine Township, 164 Pa. St., 543, it was held that: “In an action against a township to recover damages for death caused by a traction engine breaking- through a township bridge, it is proper to leave to the jury the question whether or not traction engines had become a usual and ordinary mode of travel when the supervisors reconstructed the bridge about five years before the accident. ” The instruction given in that case, which was approved, was that the case turned upon the question whether or not traction engines had become a usual and ordinary mode of travel when the supervisors of the township reconstructed the bridge; and that if they had, .then it was the duty of the supervisors to so construct, and thereafter maintain the bridge as to make it reasonably safe for such modes of travel. A similar instruction was sustained in Clulow v. McClelland, supra, and Clapp v. Ellington, supra. The charge *537 of the court in the ease before us failed to submit this material question to the jury, and practically excluded its consideration.
Similar considerations enter into the question of the contributory negligence of the person injured, in such a case. In Gregory v. Adams, supra, the Supreme Court of Massachusetts held it to be the proper rule, that “if any person undertakes to use or travel upon a public highway in an unusual or extraordinary manner, or with animals, vehicles, or freight not suitable or adapted to a way opened and prepared for the public use in, the common intercourse of society and in the transaction of usual and ordinary business, he then takes every possible risk of loss and damage upon himself; and he can have no remedy against the town to recover recompense for injuries sustained, although they be the direct result of defects and imperfections in a way for which it would be responsible in case of injury to individuals in the lawful and proper use of it.” In Clapp v. Ellington, supra, a charge was sustained, which instructed the jury that, if “the vehicle upon which the plaintiff was riding, and with which he was connected in passing over the bridge at the time of the accident in question, was unusual and extraordinary in weight, in method of construction, or manner of propelling the same along the highway, and such unusual weight, method of construction, or locomotion was such as to cause unusual and extraordinary strain upon the bridge in passing over it, then the plaintiff took every possible risk of injury upon himself in trying to pass over the bridge, and the plaintiff cannot recover for the injuries sustained by the breaking down of the bridge, under such circumstances, although the injuries were the direct re- *538 suit of such imperfections and defects in the bridge.”
The rule declared in these cases was followed, substantially, in each of the other cases already cited, and appears to be a reasonable one. A person about to cross a bridge in any of the usual and ordinary modes of travel, or transport property over it in any usual and ordinary way, has the right to assume that the public authorities have performed their duty, and therefore, that the bridge is in a safe condition for such use; and he is not chargeable with contributory negligence in acting on that assumption, unless the appearance of the bridge, its situation or structure, or other circumstance would suggest to a person of ordinary prudence that it was defective and dangerous, so that ordinary care would require, either that he should forego the contemplated use, or make sufficient examination to reasonably assure him of its safety. But a person who chooses to subject a bridge to some extraordinary burden, by placing upon it some unusual weight and causing it to be moved in an unusual manner, takes upon himself the risk of any injury thereby sustained, although the bridge was defective and out of repair. The proper test is not, as stated in an instruction requested by the defendant, whether the engine and tank on which the deceased was riding were of greater weight and more dangerous than ordinary wagons and teams, but were they, with the deceased upon them, and the use to which the bridge was then being put, an unusual method of travel and transportation, involving extraordinary peril, at that time and place; or, were the circumstances such that a person of ordinary prudence, in the exercise of ordinary care in the *539 situation of the deceased, would reasonably apprehend and anticipate that it would be dangerous to go upon the bridge in that way? If so, he was guilty of negligence proximately contributing to his death; otherwise, not.
The instructions given on the subject were such that, in order to charge the deceased with contributory negligence it was necessary for the jury to find that he was actually ‘ ‘aware of the condition of the bridge, and had good reason to believe it was not sufficient to sustain the load that was about to pass over it.” Actual knowledge, and good reason to believe, is more than the rule, as we have stated it, requires. The instructions requested were inaccurately expressed, and their refusal was not error. But the case was erroneously given to the jury as we have indicated.

Judgment of the circuit court, and of the court of common pleas, 1'eversed, and cause remanded for a new trial.