## MISSOURI-EDISON ELECTRIC COMPANY et al., Appellants, v. WEBER et al., Respondents.

### St. Louis Court of Appeals, November 3, 1903.

1. **Streets and Highways: PRIVATE PERSON'S USE OF FOR PUBLIC SERVICE.** A municipality has the power to grant a person or company the right to use its streets by laying conduits under them and constructing manholes to reach such conduits, the use being thereby distinguished from a purely private occupation of a highway.

2. **Conduits and Manholes: PRIVATE PROPERTY.** Conduits, wires and manholes placed under and in the street, pursuant to permission, do not become the city's property, but remain the property of the companies which put them in, subject to the easement of the public in the use of the street and the city's regulation and control.

3. **Highway: DAMAGES TO PROPERTY THEREIN: RIGHT TO SUE FOR.** A municipality has the same right to sue for damages to its property, including highway property, that an individual has; and, on the same principle, if it lawfully permits private property to be placed in a highway and this property is damaged while there, by carelessness, the owner has like redress.

4. ————: **MANHOLES OF PRIVATE CORPORATIONS: STRENGTH NECESSARY.** The covers to manholes of an electric lighting company, constructed according to municipal regulation, need not be of strength sufficient to bear the same weight as the rest of the street, but must be strong enough to bear the passage of such heavy loads as are likely to pass over them in the ordinary course of transportation.

5. ————: **MANHOLES PLACED IN: REMEDY FOR DAMAGE TO.** Persons are not privileged to haul loads that are extraordinarily heavy over streets without regard to the detriment to manholes of a private corporation, lawfully placed therein, and when such a manhole is broken by the passage of a load heavier than would have been anticipated in view of transportation in that locality, after notice that it is too heavy, when there is ample space to pass around the manhole, an action will lie for damage caused thereby.

Appeal from St. Louis City Circuit Court.—*Hon. Warwick Hough, Judge.*

REVERSED AND REMANDED.

*Gilliam & Smith* for appellants.

(1)   Plaintiffs were occupants of the highway under lawful authority.   As such they possessed a  qualified ownership in the surface of the highway to the extent occupied by them.   McQuillin, Municipal Code, sec. 1087; State ex rel. v. St. Louis, 145 Mo. 551; Joyce on Electric Law, secs. 420, 436; Elliott on Roads and Streets, secs. 44a, 810; Tel. Co. v. Baltimore (Md.), 43 Atl. 784; Town of Troy v. Railroad, 23 N. H. 83; Bidleman v. State, 110 N. Y. 232; Railroad v. Greenup Co.,12 Ky. L. R. 46; Railroad v. Whiteby Co.,95 Ky. 215 ;Town of Pierpont v. Loveless, 4 Hun  (N. Y.) 696; Lawrence Co. v. Railroad, 81 Ky. 225; Milburn v. Fowler, 27 Hun 358.   (2)   Plaintiffs, by reason of their lawful ownership of this manhole cover in the surface of the highway, could maintain an action for injuries maliciously or negligently inflicted upon it.   Gas Co. v. Gas Co., 89 N. Y. 493; Gaslight Co. v. Gaslight Co., 10 Exchequer 38; Moll v. Pickaway, 14 Ill. App. 343; Gas Co. v. Pope, 49 L. T. N. S. 798; 15 Am. and Eng. Ency. Law, 507 ; Sewall's Falls Bridge v. Fisk, 23 N. H. 172; Hooksett v. Amoskeag Mfg. Co., 44 N. H. 105.   (3)   It is negligence to move through the streets or along a highway an unusual or extraordinary object or load, without taking  reasonable precautions to prevent the injury of property which is lawfully in the highway.   Gregory v. Adams, 14 Gray 242; Richardson v. Royalton, 5 Vt. 580; Wabash v. Carver (Ind.), 13 L. R. A. 851; Medina v. Perkins, 48 Mich. 67; Chulow v. McClelland, 151 Pa. St. 583; McCormick v. Washington Twp., 112 Pa. St. 185; Coulter v. Township, 164 Pa. St. 543; Angell on Highways, sec. 287; Wilson v. Granby, 47 Conn. 59; Yordy v. Marshall Co., 80 Iowa 405; Com'rs v. Chipps (Ind.), 16 L. R. A. 228; Board of Com'rs v. Coffman (Ohio), 48 L. R. A. 455; Clapp v. Town of Ellington, 20 N. Y. 412. Edgerly's Case, 3 Salk 183, J. March 135; Commonwealth v. Allen, 148 Pa. St. 358, 16 L. R. A. 148;

Railway v. Morris, 8 Phila. 304; Gaslight & Coke Co. v. Vestry St. Mary Abbotts, 15 Q. B. D.; Tel. Co. v. Dexheimer, 14 N. J. L. J. 295; Millville Traction Co. v. Goodwin, 53 N. J. Eq. 448; Dickson v. El. Light Co., 53 Ill. 379; City of Eureka v. Wilson, 15 Utah 53; Railroad v. Dollery, 12 Ont. Ap. 679; Williams v. Railway, 112 Ind. 71; Keasby on Electric Wires, sec. 64; Fullerton v. Fordyce, 144 Mo. 528; Heib v. Big Flats, 73 N. Y. S. 86; Vandewater v. Wappinger, 74 N. Y. S. 699; Hill v. Thomas (1893), 2 Q. B. 333; Etherly Co. v. Aukland (1894), 1 Q. B. 37; Kent Co. Council v. Vidler (1895), 1 Q. B. 448; Brown v. N. Y. Gas L. Co., Anthon N. P. 351; Wirrall Highway Bd. v. Newell (1895), 1 Q. B. 827; Kent Co. Council v. Lord Gerrard (1897), App. Cas. 633; Regina v. Ellis, 8 Q. B. D. 466; Lord Aukland v. Lucas, 5 C. P. D. 211; Dexter v. Bridge Co., 79 Me. 563.

*Morton Jourdan* for respondent.

(1)   Plaintiffs are occupants of the highway under lawful authority, but such occupation does not give them ownership, qualified or otherwise in the surface of the highway.   Telegraph Co. v. Light Co., 46 Mo. App. 135.   (2)   A teamster, in this State, is not required to use one side of the road to the exclusion of the other. Yore v. Transfer Co., 147 Mo. 679.   Where an abutting owner has the privilege of placing something in or by the sidewalk which may serve as a convenience to his premises, it is his duty to see that the place thus used is maintained in a safe condition.   Mancuso v. Kansas City, 74 Mo. App. 142; Matthews v. DeGroff, 13 App. Div. (N. Y. S. C.) 356.   (3)   A cover becomes a part of the highway or walk and must be as secure for the wayfarer as the walk itself.   Whalen v. Gloucester, 4 Hun 27.

GOODE, J.—This appeal is from an order refusing to set aside an involuntary nonsuit in an action for damages for injuries caused to a manhole by negligently and recklessly driving a wagon containing a great and uncommon load across it. The plaintiffs are all electric lighting companies organized under the laws of the State of Missouri and joint owners of the manhole. Said corporations had constructed conduits under the surface of the streets, in which their wires were stretched, and manholes that afforded access to the conduits for the purpose of making repairs. The ordinances of the city require wires and cables used in transmitting electricity to be placed underground and authorize the Board of Public Improvements of the city to grant permission to companies wishing to use wires for the transmission of electricity to construct conduits, ducts, manholes and other appurtenances in the streets on such terms as, in the opinion of said board, will best subserve the public welfare. All those structures are required to be made in accordance with specifications prescribed in the city ordinances, and to secure compliance, as well as to save the city harmless from damages which may arise from such uses of the streets, the city must be indemnified by a large bond and is also given the right to supervise the construction of the conduits and manholes, and, from time to time, to order changes in their material or their location in the streets; all to be made at the expense of the owners.. Mun. Code, art. 6.

Plaintiffs had obtained permission to build their conduits and necessary manholes under the streets of St. Louis; among others, under Fourth street. The particular manhole with which we are concerned is on the west side of that street, five feet and two inches east of the west curb, ten feet and five inches west of the west rails of the street railway thereon, forty-four feet west of the east curb and forty-nine feet south of St. Charles street. It was six and one-half feet deep, five feet

square, consisting of four brick walls, with an iron roof over them and a cast iron plate thirty inches square and one and one-half inches thick on top of the roof, under which were iron ribs one and one-half inches deep. This plate rested on a socket, and the brick walls supporting it were thirteen inches thick. Two six-inch beams ran from one of those walls to the other, a distance of five feet; and on those beams the manhole cover rested. The manhole in all its parts was shown to have been constructed in accordance with the ordinances.

There was evidence to show that it would support, without breaking, a load of twenty-six thousand pounds, though just what weight would break it depended on whether the load was hauled quietly or with jolts. There was also evidence to prove that the usual load of a two-horse wagon in the city was about five thousand pounds, of a four-horse wagon about twenty thousand pounds, and that occasionally a six-horse load was drawn through the streets; but the weight of such a load was not shown.

The cover of this manhole was broken by the defendants' driving a wagon over it which weighed about thirteen thousand pounds, loaded with a solid granite column weighing fifty thousand pounds; the total weight being from sixty-three to sixty-four thousand pounds. The same wagon broke seven or eight other manhole covers on the same trip before it reached this one. No precautions were taken by the defendants to protect them from breaking, and their contentions are that manhole covers in a street ought to be as strong as the rest of the surface of the street, and that if this one broke under a load which could be driven over the street without detriment to the granite blocks with which it was paved, plaintiffs must bear the loss.

On the other hand it is contended by the plaintiffs that if they constructed their manhole and its parts in conformity to the specifications of the ordinances and

strong enough to bear the heaviest loads which are accustomed to pass along the street, they complied with their legal duty; and if their property was damaged by a load so extraordinarily heavy that it could not have been anticipated as likely to pass over the manhole, and which was hauled over it without precautions when the defendants knew it was likely to break the cover, they are entitled to recover their loss.

Defendants further insist that plaintiffs were mere licensees in the use of the street, had no property in or ownership of it, and, hence, can not recover for any damage done to the manhole, as it composed part of the street.

1.   The title to the injured property was clearly in plaintiffs, whose conduit was legally laid under the street and their manhole legally constructed from the top to the conduit beneath.   The municipality of St. Louis has power, legislatively delegated, to grant a person or company the right to use its streets in that manner as tending to promote the public comfort and convenience, the use being thereby distinguished from a purely private occupation of a highway.   This proposition was decided in State ex rel. Subway Company v. St. Louis, 145 Mo. 551, a case in which the city of St. Louis had originally granted to the National Subway Company the right to construct conduits for electric wires under the streets of the city with the necessary manholes, and afterwards had refused to consider specifications for manholes submitted by the Subway company, on the ground that the original franchise was void.   The Supreme Court in an elaborate opinion, held that it was incumbent on the city to allow the construction of manholes to reach the conduits which had been laid and occupied by the electric wires.   The opinion, after reviewing certain authorities, says:

"It must follow from what has been said that the city of St. Louis, having control as it does over its streets, might, for the purpose of meeting the necessi-

ties of electric-using companies, set apart for them a part of its streets, on such terms and conditions as it might reasonably impose without in any way misappropriating the streets or any part of them."

And this doctrine is in harmony with the current of decisions. Julia Building Assn. v. Telephone Company, 88 Mo. 258; St. Louis v. Telegraph Company, 149 U. S. 467; 148 U. S. 102.

2. Conduits, wires and manholes placed under and in the streets of a city, pursuant to permission, do not become the city's property, but remain the property of the companies which put them in, subject, of course, to the easement of the public in the use of the street as a thoroughfare, and to the city's regulation and control, which may not be surrendered. It would be as reasonable to say that the rails and wires of an electric railway company, when laid on and over the surface of the street by municipal authority, belong to the municipality and cease to belong to the railway company. The manhole in all its parts belonged to the plaintiffs; plaintiffs paid the cost of building it, are obliged to keep it in repair, and are plainly recognized and designated in the ordinances as its owner. One section of the ordinance under which it was built says that all conduits, manholes and other appurtenances shall be maintained by the owners thereof to the satisfaction of the Board of Public Improvements and that, failing their proper maintenance by the respective owners, the board may order the necessary work done and require the owners to pay for it under penalty of a suit on the bond given to the city. While the wisdom of allowing private corporations or individuals to occupy city streets with their property may be a matter of serious public concern, if they are allowed to do so, their property in the streets is entitled to the same protection, neither more nor less, that it would enjoy if the city itself owned it; and, indeed, the city does own numerous manholes similarly located.

3. That municipalities have a right of action for injuries to municipal property, such as bridges and highways, is beyond dispute, cases of that kind having been often successfully litigated by cities, counties and townships. Bidelmen v. State of New York, 110 N.Y. 232; Lawrence County v. Railroad, 81 Ky. 235; Pierpont v. Loveless, 4 Hun (N. Y.) 696; Louisville etc., Railway v. Whiteby Co., 95 Ky. 215; Commonwealth v. Allen, 148 Penn. St. 358; Troy v. Railroad, 23 N. H. 83; Hooksett v. Amoskeag Mfg. Co., 44 N. H. 105.

In the Bidelman case certain bridges and culverts of the town of Gaines were damaged by a break in the Erie canal caused by the negligence of the agents and officers of the State; and it was held that as the town was liable for the maintenance and repairs of its highways, it had an interest in the preservation of its bridges and culverts which gave it a right of action and remedy over against any person who intentionally made repairs or rebuilding necessary.

In Troy v. Railroad Co., 23 N. H. 83, the action was for demolishing and destroying a bridge on a highway which belonged to the town. It was held that, as the town had to maintain its roads and bridges, it had such an interest or property in them that any person, even the owner of the ground to which the highway pertained as an easement, who destroyed or injured the highway, was liable to the town for the consequent damages. Hooksett v. Amoskeag Mfg. Co., 44 N. H. 105, is to the same effect.

A standard author thus states the rule:

"Where the duty of constructing and maintaining highways is enjoined upon road districts or townships, then, as we suppose, they must prosecute the action necessary to prevent an injury or destruction of the easement vested in the public; but where the statute makes no provision upon the subject and counties have a general charge of county affiairs and property the action may be prosecuted by the county within whose territory

the road is situated.'' Elliott, Roads and Streets (2 Ed.), sec. 442.

We know of no rule which denies a municipality the same right to sue for damages to its property as an individual has; or as much right to sue for damages to highway property due to a tort as for damages to any other property. Undoubtedly a city has the right, as the above authorities show, to recover compensation for injury done to its highways by carelessness or wantonness; and on the same principle, if it lawfully permits private property to be placed and kept in a highway, and this property is damaged while there by carelessness, the owner has like redress. We therefore find no difficulty in holding that, as plaintiff's manhole was put down by authority, an action arose in their favor if it was tortiously broken.

4. The next inquiry is, did the defendants commit a tort? And this question goes to the respective duties incumbent on the parties; the duty of the plaintiffs in constructing the manhole with respect to its weight-bearing strength; and of the defendants in hauling an exceptional load over it after being warned of the danger of breaking the cover by their experience with other manhole covers.

That plaintiffs' manhole was constructed according to municipal regulations and like others in the city of St. Louis, is not disputed. But this fact alone is not conclusive as to its merit. The true test of the sufficiency of the cover was its fitness to bear the strains that would naturally fall on it according to the course of transportation; and whether it measured up to that standard was a question of fact to be found; for the evidence is susceptible of different inferences. Defendants' position that the law required the cover to be, in any event, as solid as the granite street, we regard, from several points of view, as untenable. To so hold would impose on the plaintiffs a heavier obligation in constructing its manholes than rests on the city itself in con-

structing manholes and streets.    The street in the vicinity of this manhole was paved with the hardest and strongest substance with which streets are ever paved; but some weaker pavement might bear any loads to be reasonably anticipated.    And paving it in that manner was from choice in the exercise of a municipal discretion as to street paving.    The pavement might have been wood, brick or asphalt; which many streets have.    All roads and streets need not be of equal solidity, nor need one be of the same construction throughout its course—can not be, in fact; for in some parts a natural rock foundation capable of resisting any weight may underlie the top, while soil or sand underlies other parts; and bridges and culverts, necessarily of less strength than rock or firm earth, are required in places.    The law is that a highway, whether country road or city street, should be of a strength proportioned to the use that will be made of it and strong enough for the safe passage of, not only average loads, but such heavy loads as are likely to pass over it in the ordinary course of travel and transportation, considering its location.    Gregory v. Inhabitants of Adams, 14 Gray 242; Fulton Iron Works v. Kimball Twp., 52 Mich. 146; Wilson v. Town of Granby, 42 Conn. 59; Sindlinger v. Kansas City, 126 Mo. 315.    But this is far from saying that the highway must be everywhere strong enough to support any load a person may have occasion to haul. All decisions dealing with the subject tend to the conclusion that a thoroughfare may be taxed by a weight great and exceptional, which it can not be expected to bear, need not have been prepared to bear, and to which it ought not to be subjected.    The proposition has been discussed mostly in actions for injuries to persons and property caused by the collapse of a bridge, where the defense was an excessive strain put on the bridge; but those cases bring into clear view the principle involved, which is, that the law requires highways to be constructed for safe uses in customary modes such as are

required for the reasonable convenience of the community's ordinary affairs, and not for extraordinary uses either in the weights transported or strains otherwise imposed. Yordy v. Marshall County, 80 Ia. 405; Clapp v. Town, 3 N. Y. Supp. 516; McCormick v. Washington Twp., 112 Pa. St. 185; Coulter v. Pine Twp., 164 Pa. St. 543; Railroad v. Larue, 178 Pa. St. 249; Commissioners v. Chipps, 131 Ind. 56. The further rule is also deducible from the decisions, that a person using a road or street is bound to use it in a reasonably careful manner and that he violates this duty if he subjects it to extraordinary strains and burdens without corresponding care to prevent harm.

Cases in which the public sought compensation for injuries to highways by tortious use are infrequent; but on principle the right to compensation is obvious. A man may start over a granite roadbed with an inordinate load, which will, however, make no impression on the granite blocks; he may come to a bridge or other structure that the load will crush; shall he then proceed, regardless of ruin to the structure, if he can prevent injury by a slight detour or other easy preventive measure? Surely the law does not permit such conduct. Occasionally the maximum load is fixed by statute; when it is not, the jury must determine what it ought to be by their knowledge, gathered from experience and observation.

Precedents are not altogether wanting. An ancient one exists wherein a prosecution for hauling an excessive load on the highroad from Oxford to London was successfully maintained in the Court of King's Bench; and wherein it was said, too, that any citizen specially damaged by the wrong might maintain his private action. Rex v. Edgerly, 3 Salk. 183; J. March's Rep. 135.

In Commonwealth v. Allen, 148 Pa. St. 358, the case was an indictment for maintaining a nuisance.

The nuisance charged was that defendants ran, over a public road, an engine propelled by steam, commonly known as a traction engine, which obstructed and injured the road; and a conviction was sustained. The court said regarding the offense, that highways and bridges are constructed for ordinary use in an ordinary manner, and not for an unusual or extraordinary use, either by crossing at great speed, or by the passing of a very large and unusual weight.

5. The proposition that a private owner of property lawfully in the highway, such as a street railway, or under it, such as gas pipes, has a remedy for careless or willful injury to it, has received judicial attention and approval. An act of that sort directly infringes the precept that one ought to use his own possessions so as to do no needless harm to others; a precept of obvious justice and so widely applicable to practical affairs that most of the rules of tort law, designed to regulate conduct in different situations and circumstances, have been developed from it. And the maxim itself is, in the absence of satisfactory precedents, a trustworthy criterion of the lawfulness of an act.

In Normantown Gas Company v. Pope, 49 L. T. N. S. 798, the gas company had been given permission to lay pipes and mains under the surface of the road. Defendants were incorporated for working beds of coal in Normantown and other places. They had mined under a highway, in consequence of which the road subsided over a considerable portion of its length, causing the mains and gas pipes to be broken in several places; for which damages were prayed and an injunction against the continuance of the wrongful acts. It was held that as the gas company was given the right by the Legislature to lay its pipes and mains, it acquired also the support of the subjacent land as against the landowner. Damages were awarded.

In Railroad Co. v. Morris, 8 Phila. 304, a street railway company was notified that the defendants pro-

posed to occupy the streets on which the railway was, for a couple of hours, in hauling some heavy boilers. The railway company filed a bill to restrain the moving of the boilers, alleging that it would stop their cars and also greatly inconvenience the public and that the passage of the boilers would injure the highway and cause damage to the railway company; since it was required to keep the highway in repair; also would damage the sewer under the street. The injunction was refused because the court thought the stoppage of travel would be very brief and that the boilers could be moved without damage to the street; but the proposition was recognized that if moving the boilers would result in damage to the street, relief might be granted.

In Gas Light & Coke Co. v. Vestry of St. Mary Abbott's Kensington, 15 Q. B. Div. 5, plaintiffs had laid some pipes under the surface of certain streets as their franchise entitled them to do. The title to the street was in the Vestry, which was charged with keeping it in repair. Heavy steam rollers were employed to make repairs, thereby injuring plaintiff's pipes which were sufficiently below the surface of the street not to be injured by ordinary modes of repair. On these facts an action for damages and an injunction was brought by the plaintiff. Defendants succeeded below and an appeal was taken. The court held plaintiff was entitled to relief, both for the damages and against similar injuries in the future. The respective rights of the parties were dealt with as follows:

"It is obvious from the foregoing statement that the rights of the plaintiff and of the defendants are to a certain extent conflicting. On the one hand, it is plain that the plaintiff's right to lay its pipes and have them uninjured is subordinate to the right of the public to use the streets and have them kept in repair; on the other hand, it is equally plain that the duty of the defendants to the public and their right against the plaintiff is to repair the streets and keep them fit for traffic.

Now there is no dispute that the defendants can perform their duty without using steam rollers of such a weight as to injure the plaintiff's pipes; but they say it is their duty and right to repair the roads in the most economical and best way, and to avail themselves of all improvements regardless of the effect on the plaintiff's pipes. FIELD, J., has held that this contention can not be supported, and we are of opinion that his decision is correct. . . .

"In this case there is no statute and it is not necessary to say more. But the conclusion thus arrived at on general principles only, is, in our opinion, very much strengthened by those statutory enactments which empower the defendants to require the position of the plaintiff's pipes to be altered for the public benefit, but which also compel the defendants to pay the expenses of such alterations. We refer particularly to 10 and 11 Vict. c. 34," etc.

6. The result of all the adjudications which directly or remotely bear on this case, so far as we have found, is that persons are not privileged to haul loads that are extraordinarily heavy over roads or streets without regard to the detriment to the street itself or structures lawfully constructed in it; but can only make such use of the street as is reasonable, all the circumstances considered, and considering especially the loads that should have been anticipated in view of the travel and transportation in the particular locality. The conclusion is to be deduced, too, that not any load or pressure which the street as a whole will bear may always be lawfully transported over it; but that some reference must be had to property in and under it, such as gas pipes, conduits, culverts and the like. This rule is wise; for the needs of modern life are thought to make it necessary and beneficial to use city streets for other purposes than travel and transportation. The comfort and convenience of the community demand sewerage, gas, electricity, water and rapid transit,

which necessities can be, as is supposed best distributed by allowing suitable appliances to be put on, over and under the streets. There must of course, be access to the underground pipes and conduits for repairs. Such access is afforded by manholes which are as necessary, perhaps, as the pipes themselves, and must be considered and regarded in the use of the streets. They should be constructed so as to bear any load which experience shows is likely to pass over them in the ordinary transactions of the community but not necessarily any load which may be hauled, or that other parts of the street will bear; for it is impossible to thus construct them. Tunnels are made in streets for cables to run in and those tunnels are of less supporting strength than the solid surface of the street. There is testimony in this record that cable conduits are sometimes injured by excessive loads passing over them and that the granite paving above them is thereby depressed. Where these necessary constructions exist, a person who desires to convey a load of extraordinary and dangerous weight above them, ought to take care, either to avoid the weak parts of the street, or to use those parts with precautions to prevent injury.

The testimony before us tends to prove a disregard of plaintiff's interest and rights which was culpable; for if the defendants were not apprised of the danger of breaking manhole covers by the first one or two they broke, they certainly were apprised before they broke this one, as they had previously crushed seven or eight. In fact, on their contention, they might crush every manhole, private or municipal, in the city with impunity. It appears there was ample room to pass by instead of over the covers, and there was evidence tending to prove that when loads of excessive weight are drawn along the street, the surface of it can be protected by laying boards or metal plates for the wheels of the wagon to roll over.

We do not decide that this manhole was properly

made; for there was some testimony that the weight under which it broke was less than it should have borne. Neither do we determine that as a matter of law, the weight which the defendants hauled over it was so exceptionally great as to be excessive, or that the defendants were guilty of negligence in any way. Our decision is, that there was evidence bearing on those questions to be weighed; in other words, that plaintiffs made a prima facie case. We think, therefore, the circuit court erred in sustaining a demurrer to the evidence and in refusing to set aside the involuntary nonsuit.

The judgment is reversed and the cause remanded. *Bland, P. J.,* and *Reyburn, J.,* concur.