## City of Fort Wayne v. Merriman, Administrator.

[No. 6,658.   Filed February 3, 1910.]

1. Negligence.—*Defective Bridges.—Municipal Corporations.—Pedestrians.*—A city owes no duty to a person injured by reason of a defective bridge, unless such person was using such bridge for a proper purpose.   p. 288.

2. Negligence.— *Proximate Cause.— Circumstantial Evidence.*—A city is not liable for injuries sustained because of a defective bridge unless such negligence was the proximate cause of the injury, but such negligence and proximate cause of the injury sustained may be established by circumstantial evidence.   p. 288.

3. Negligence.—*Cities.—Bridges.—Evidence.*—Mere evidence that a bridge belonging to a city was protected by a defective guard-rail, that the plaintiff's decedent was found dead under the bridge, and that the rail showed that she had fallen over at such point, is not sufficient to establish a liability against such city.   p. 289.

From Allen Circuit Court; *E. O'Rourke,* Judge.

Action by Eli Merriman, as administrator of the estate of Mary Lyons, deceased, against the city of Fort Wayne. From a judgment on a verdict for plaintiff for $1,000, defendant appeals.   *Reversed.*

*Guy Colerick,* for appellant.
*Emrick & Emrick,* for appellee.

Rabb, J.—Appellee's decedent was killed within the city limits of Fort Wayne, by a fall from a bridge which forms a part of one of the city streets, where it crosses the Saint Mary river.   This action was brought by appellee, as administrator of her estate, for the use and benefit of an alleged dependent child of the intestate, to recover for her death, which is charged to have resulted from negligence on the part of the city.

Issues were formed, and a jury trial had, resulting in a verdict in favor of appellee. Appellant's motion for a new trial was overruled, and judgment was rendered in appellee's favor upon the verdict.   A reversal is asked upon the

ground, among other things, that the evidence is insufficient to sustain the verdict.

The appellant has brought to our aid in the decision of this appeal an able and carefully prepared brief, but from some cause appellee has failed to present us with a brief, and we are left to gather, as best we may, the theory upon which the appellee claims the evidence, which is practically without material conflict, makes out his case.

The bridge from which the decedent fell crosses the river from north to south, and the west side thereof, for the accommodation of pedestrians, is provided with a walk five feet in width, with a plank floor, the outside guarded by an iron railing consisting of two iron tubes, the upper one two inches in diameter, and three feet, three inches from the floor, and the lower one about one and one-half inches in diameter, and about half way between the upper rail and the floor. These are supported by iron posts fastened to the floor, and are attached to the posts by means of threaded holes in the posts into which the threaded ends of the tubes are screwed. The negligence relied upon to charge the city with liability for decedent's death, is its failure to exercise ordinary care to maintain the bridge in a safe condition for public travel, in that it permitted one end of one of the upper guard-rails to become so much out of repair that it came loose from the post supporting it, by reason of which, the decedent, while crossing the bridge in the darkness of the night and coming in contact with the rail, it gave way and she was precipitated to the ground below, her death resulting.

It appears from the evidence that about 11 o'clock on the night the woman was killed, she and a male companion were seen on the street together some distance from the bridge, going in the direction of it. A very short time afterwards the woman and her companion were discovered under the bridge, the woman in a dying condition, and her companion badly injured. One end of the upper rail of the bridge, im-

mediately over where the woman lay, was detached from the post, and the detached end hung down about eighteen inches. Her companion was standing near where she was lying. There was evidence that this rail was loose in the socket, and would come out, and that this condition of affairs had existed for a sufficient length of time to enable the city to learn of the defect and repair it. The evidence shows that while it was night, it was not so dark but that persons of normal eyesight, crossing the bridge, could see the walk. There is not a word of explanation from any source as to how the accident happened. The woman's companion testified as a witness at the trial of the case, but claimed that his memory was so impaired by his injuries that he was not able to recall anything that happened at that time.

From these meagre circumstances, could the jury properly infer all the facts essential to create a liability on the part of the city for the woman's death? The only negligence chargeable to the city was with reference to the loose rail, and to render the city liable the plaintiff must show something more than that the city was negligent in failing to keep the rail in good repair, and that the woman fell off of the bridge and was killed. It must also appear that at the time of the injury, the woman was using the bridge for the purpose of ordinary travel; otherwise appellant owed her no duty. *Board, etc.,* v. *Chipps* (1892), 131 Ind. 56, 16 L. R. A. 228; *Bucher* v. *City of South Bend* (1898), 20 Ind. App. 177.

It must also appear that the injury was proximately caused by the negligence complained of. It is true that both of these facts may be established by circumstantial evidence, but the circumstances must be of such a character as to invite inference, and not leave it a matter of mere guess, suspicion or conjecture.

It is self-evident that the loose rail was not an active agent to produce the injury which resulted in decedent's death. It

did not throw the decedent and her companion from the bridge. The most that could be claimed in that respect was that it failed to prevent her from falling, when some force brought her body against it. Some movement made by the persons themselves caused the fall from the bridge, and the movement that brought them against the defective rail, and threw them from the bridge, was clearly not a movement in the direction of either end of the bridge. And while the defective rail was out of place and down at one end, it still would present some obstacle to prevent a person from falling off of the bridge, and the decedent could not have fallen had not some force impelled her against the rail. There is no fact shown in evidence from which the jury could infer that she stumbled and fell against the rail of the bridge, or that she could have been crowded against it by a passing throng of travelers. So far as the evidence shows, she and her companion were alone on the bridge at the time. The circumstances shown, while they justify the inference that the decedent fell from the bridge, and fell over the defective rail, do not invite the inference that the defective rail was the proximate cause of the injury. What caused the woman to fall from the bridge is left by the evidence in profound mystery, and can only be a subject for speculation and conjecture. The court should have directed a verdict for defendant.

Judgment of the court below reversed, with instructions for a new trial.