THE TOWNSHIP OF MEDINA v. GEORGE M. PERKINS.

*Municipal liability for defects in bridges—Negligence—Inspection by township officers.*

Uncontested facts should not be treated as open questions in requesting charges and giving instructions.

A township must receive notice and act through its officers, and must exercise through them a reasonable supervision over its highways and bridges, watch their condition and see that they are reasonably safe for public travel.

Want of knowledge sometimes implies a want of due care; as where township officers, whose duty it is to keep bridges in a safe condition, do not know of defects which an examination would readily disclose.

Township officers cannot ignore common sense and ordinary experience in discharging their duties, and neglect to keep in repair a bridge which is generally suspected to have become weakened from age, merely because they have had no actual notice of any defect.

Township officers are only required to exercise ordinary care and prudence and reasonable intelligence in performing their duty of supervising the condition of roads and bridges and keeping them in repair; and in determining the standard of diligence required from them by law it is proper to consider the size of the township, the sparsity of the population, the number and remoteness of the roads and bridges and the improbability of finding road officers with exceptional qualifications.

Act 240 of 1879 makes townships liable for injuries caused by defects in highways and bridges. Within forty days after the act took effect a man crossing a bridge with some heavy machinery drawn by horses, was injured in consequence of the interior rottenness of a beam. *Held*, that, in an action against the township, the fact that the highway commissioner knew of repairs made the previous year and of the results of inspections then had should be taken into account, together with the age and appearance of the bridge, as bearing on the question of his duty to inspect after the act took effect.

Error to Lenawee. Submitted Jan. 6. Decided Apr. 12.

Case. Defendant brings error. Reversed.

*Weaver & Weaver* and *W. A. Underwood* for plaintiff in error. A township is not liable for injuries resulting from latent defects in its highways, unless it had notice of them: *McGinity v. Mayor* 5 Duer 674; *Garrison v. Mayor* 5 Bosw. 497; 2 Dill. Mun. Corp. 920; *Hicks v. Chaffee* 13 Hun 293; *Hubbard v. Concord* 35 N. H. 72; *Dewey v. Detroit* 15 Mich. 312; *Heilner v. Union County* 7 Ore. 83: 33 Amer. 703; and if there is no actual notice there must be such circumstances as imply negligence: *Manchester v.*

*Hartford* 30 Conn. 118 ; ordinary care is such as most people exercise in their own affairs : *Wheeler v. Westport* 30 Wis. 409 ; municipal corporations are not insurers : 2 Thomp. Neg. 796 ; *Centralia v. Krouse* 64 Ill. 21 ; *Chicago v. McGiven* 78 Ill. 347 ; *Chicago v. Bixby* 84 Ill. 85 ; *Grayville v. Whitaker* 85 Ill. 441 ; *McCabe v. Hammond* 34 Wis. 593 ; where the defect is latent actual notice must be shown : *Goodnough v. Oshkosh* 24 Wis. 549 ; *Weisengberg v. Appleton* 26 Wis. 56 ; *Ward v. Jefferson* 24 Wis. 342.

*Millard & Bean* and *Sawyer & Lane* for defendant in error. A township is liable for injuries resulting from defects in its highways if ordinary vigilance would have brought them to the notice of the proper officer : *Rapho v. Moore* 68 Penn. St. 404 ; *Reed v. Northfield* 13 Pick. 94 ; *Cusick v. Norwich* 40 Conn. 375 ; *Barton v. Syracuse* 36 N. Y. 54.

GRAVES, C. J. The act for collecting damages for injuries caused by defects in public ways and bridges (Pub. Acts of 1879, p. 223) had been in operation about forty days, when a public bridge in the township of Medina in Lenawee county broke down with Mr. Perkins, inflicting injuries upon him. The occurrence was October 11, 1879. In February following he sued and recovered and the township brought error to reverse the judgment.

The bridge is described as a truss bridge, with three needle beams of swamp oak supporting the floor and having rods going down through the beams with nuts and washers as supports and bearings. It was a link in a north and south road and Perkins approached from the north with a heavy portable engine drawn by three horses. He rode on the engine and when it reached the first needle beam the east end of the beam gave way and the northeast corner of the bridge went down carrying the engine, the two wheel-horses and Mr. Perkins. It was found that the pressure had forced the beam down over the nut and washer on the end of the rod by tearing a hole through the beam and that this was due

to a small spot of decay within the beam and around the rod and which had been hidden by sound wood on the surface constituting a shell of an inch or more in thickness over the decayed portion.

On trying the cause the inquiry for the jury was needlessly encumbered with topics which were not exposed to contention, and such matters should not have been treated by requests and charges as though they were open questions. The practice of throwing everything into the crucible together, whether controverted or not, is almost certain to embarrass a jury and is very likely to mislead them. That Perkins was trying to cross the bridge with the engine and that it fell with him, that he was more or less hurt, that the defect was as described above, that the township authorities had no actual knowledge or notice of its existence, that the bridge had been built about nine years, that the needle beams had been used before for about four years in a former bridge on the same site, but were sound when put into this one, were facts indisputable.

It was not a question in the case whether the township negligently delayed making repairs after actual notice that the bridge was in condition to require them. The defense claimed that the township was not aware there was any defect; and the other side, not taking issue on that claim, contended that in view of the state of things existing, the want of knowledge was itself a fault which in no manner obviated responsibility for the failure to repair.

It was shown by experts that a skilful test and one to be relied on to determine as to soundness of bridge timbers requires a resort first to pounding and secondly to boring, and that the defect here would have been disclosed by such a test had it been seasonably applied to the locality of the decayed spot. And one expert of twenty-one years' experience in the service of a railroad company gave an opinion that the nut and washer must have begun to dent in as a consequence of the interior rot, and that an inspection with eye or hand would have sufficed to reveal the existence of the rot through this effect. Again, it was given in evidence

without denial that in November, 1878, the bridge under-
went certain repairs, and that the repairer and the highway
commissioner at that time, and a gentleman residing near at
about the same time, carefully inspected the bridge and
examined the needle beams and that the nuts were not then
pressed in at all, but remained in the same condition as when
the bridge was erected, and that the timber appeared to be
sound and the bridge safe; that neither applied the test of
pounding or boring, though one applied his pocket-knife to
see whether there was any unsoundness. It was also proved
and not disputed, that in August and about two months
before the bridge fell, a steam-engine, weighing less than
that in question by about a ton perhaps, was hauled over the
bridge without any detriment so far as appeared.

It is not very difficult to see that the chief difference
touching the existence of a right of action was in regard to
the measure of township duty and responsibility under the
circumstances presented. Yet on careful examination of the
requests and charges it is not easy to interpret the view
which was held by the circuit judge or by either of the
parties. And there is strong reason for belief that the jury
were not able to draw any distinct rule from the directions
which were submitted.

A township must know and act through its officers, and
the mode and range of choice of these officers is prescribed
by law, and it would be outrunning the Constitution and
the course of legislation under it to expect greater qualifi-
cations than the average of township communities possess.
Through its officers a township may know of the existence
of a defect in a way or bridge, and where such knowledge is
gained the township may become liable for negligence in
not repairing. On the other hand a defect may exist and
be unknown and the town still be liable on the ground that
the prime fault consists in being ignorant; it being a clear
principle that a want of knowledge may in given circum-
stances imply a want of due care. The general duty of a
township is to exercise through its officers a reasonable
supervision over its ways and bridges, and within fairly

practicable limits to be watchful of their condition and trustworthiness, and see that they are kept in a reasonably safe condition for public travel. Its officers may not ignore the dictates of common sense and the lessons of ordinary experience and refuse to see or refuse to heed what others see and others understand. When it is generally known that a bridge has become decrepit, or when a bridge has stood so long that there is much suspicion of it, the officers of the township may not disregard the warning conveyed by these circumstances and think to excuse their neglect to take action on the ground of having had no actual notice of a dangerous infirmity.

In all these cases what is finally required is the exercise of ordinary care and diligence, neither more nor less. But what is ordinary care and diligence in the sense in which the law speaks must often depend on many considerations. Some have been alluded to. In giving this rule as a criterion of duty about keeping informed in regard to the actual condition of the public bridges and in regard to their preservation in safe repair, the law must be taken as comtemplating what would have to be encountered, in the size of the township, the sparseness of population, the number and remoteness of the ways and bridges which would be equal objects of attention, the unfitness of the organization and its official staff for prompt inspections and prompt reparations and the unlikelihood of finding road officers with exceptional qualifications. And the supposition is not admissible that an intention has existed to require something not consistent with such conditions. The law will not impose an impracticable rule of duty. Township officers are not expected to be experts, nor learned engineers, nor persons liberally instructed in mechanics, nor individuals equipped with the resources of experienced specialists; and nothing more can be demanded of them than reasonable intelligence and ordinary care and prudence. And no duty is enjoined on the township to keep informed of the condition of its bridges that may be taken as being above the capacity of its own officers.

But the present case requires reference to a special matter. When the act of 1879 began to operate it found the highway commissioner of Medina already well acquainted with this bridge. He held in his mind the knowledge of the repairing done the year before. He also held in his mind the facts concerning the inspections then made and the judgments formed that the bridge was then in good condition and safe; and no inquiry bearing on his duty or that of the township to inspect in the short interval between the time the act took effect and that when the bridge fell can be perfect unless it embraces these facts.

Now considering the age and character of the bridge, the fact of the repairing a year before, the fact of the inspections then made and their results, the appearance of the bridge, and likewise considering all the incidents affecting the question, was the failure, during the space between the time the statute began to operate and the time when the bridge fell, to examine and discover the rotten spot in the needle beam, a failure to use reasonable intelligence and ordinary care and prudence, under the explanations which have been given?

The various propositions in the charge and requests have not been discussed. It is not necessary. The views submitted by the circuit judge are not in accord with this opinion.

The declaration is complained of, and no doubt it is open to serious objections. But it is not deemed expedient to take time to examine them. Any change found necessary to perfect the pleading can be effected in the court below by amendment.

The judgment must be reversed with costs and a new trial granted.

The other Justices concurred.