THE FULTON IRON & ENGINE WORKS v. THE TOWNSHIP OF KIMBALL.

*Township bridges—Liability for soundness—Settlement of damages.*

1. While a township putting up public bridges is bound to make them strong and secure, it is not obliged to anticipate every conceivable strain to which they may be subjected, such, for instance, as the passage of heavy machinery of a kind not used when the bridge is

built. And in repairing, it is only required to put a bridge in the same condition of strength and soundness as new bridges of the same kind.

2. A township is not an insurer of heavy machinery moved across a bridge within its limits.

3. Compromising with one person does not amount in law to admitting liability to a stranger to the compromise, even if the stranger has a claim growing out of the same transaction.

4. Proof of the reasons for precautions taken after an accident does not indicate foreknowledge of their necessity, and is irrelevant in an action for resulting injury if evidence is given of the real condition and appearance of the premises beforehand.

5. In an action for injury resulting from the breaking of a bridge, evidence of new methods in building bridges is immaterial unless it appears that there was fault in not knowing and using them.

6. Municipalities are under no legal obligation, outside of the Constitution and statutes, to build bridges where none have been before.

7. In an action against a township for an injury done to heavy machinery from the giving way of a bridge over which it was being moved, there was no error in admitting testimony that the approaches to the bridge were so steep that it had not seemed likely that very heavy loads could be placed on it without using extra teams; and that for several years and up to the day of the accident it had been safely crossed by unusually heavy loads.

Error to St. Clair. (Stevens, J.) Oct. 25.—Dec. 20.

Case. Plaintiff brings error. Affirmed.

*George P. Voorheis* for appellant. Townships are liable for latent defects in bridges which the statute requires them to keep in repair: *Rapho v. Moore* 8 Am. Rep. 202; *Gregory v. Adams* 14 Gray 242; and this liability extends to injuries caused by omission to repair: *Requa v. Rochester* 45 N. Y. 129; *Davenport v. Ruckman* 37 N. Y. 568; *Erie v. Schwingle* 22 Penn. St. 384; *Hutson v. Mayor* 9 N. Y. 163; *Hickok v. Plattsburgh* 16 N.Y. 161 (note); *Bloomington v. Bay* 42 Ill. 503; the same rule applies to bridges as to highways: 2 Dill. Mun. Corp. §§ 579, 580; *Manderschid v. Dubuque* 29 Ia. 73; *Krause v. Davis County* 44 Ia. 141; *Smoot.v. Wetumpka* 24 Ala. 112; *Chicago v. McGinn* 51 Ill. 266; a municipality may be liable for defects of which

it is ignorant: *Prindle v. Fletcher* 39 Vt. 257; *Dreher v. Town* 22 Wis. 675; *Weisenberg v. Winnecome* 56 Wis. 667; great danger demands greater watchfulness: *F. & B. Turnpike Co. v. Phil. Tren. R. R. Co.* 54 Penn. St. 350; a municipality must exercise active vigilance by its agents in performing the statutory duty of keeping bridges and highways in repair: *Mayor v. Perdue* 53 Ga. 607; *Todd v. Troy* 61 N. Y. 506; *Chicago v. Hoy* 75 Ill. 530; *Rosenberg v. DesMoines* 41 Ia. 415; *Cusick v. Norwich* 40 Conn. 375; ignorance of defects is negligence where it results from omission to make inquiry: *Boucher v. New Haven* 40 Conn. 457; *Alexander v. Mt. Sterling* 71 Ill. 366; the length of time a bridge has stood without repair is constructive notice that it needs examination: *McGinity v. Mayor* 5 Duer 674; *Griffin v. Mayor* 9 N. Y. 456; the mere appearance of the bridge will not excuse neglect: Whart. Neg. § 977; *Rockford v. Hildebrand* 61 Ill. 257.

*Avery Brothers* for appellee.

CAMPBELL, J. Plaintiff sued defendant for injury to a steam threshing engine, caused by the breaking down of part of a bridge over which it was passing. The jury found for defendant, and plaintiff complains of error in the rulings.

The whole circumstances resemble very closely, even to the details of the accident, those which were presented in *Perkins v. Medina* 48 Mich. 67. Several of the questions are mere repetitions of those raised in that case, and the court below so considered them, and decided in accordance with the views there expressed. We need not, therefore, go further than to examine how far questions arose not already thus disposed of, and in our view the differences are not material.

In order to recover it became necessary for plaintiff to show, not only damage from defects in the bridge, but fault in defendant in having a bridge in such condition; and such fault could only exist where there had been failure to repair injuries which defendant either knew, or had such notice of as should have led to the removal of the

mischief. This involved questions of fact for the jury under proper instructions, and inasmuch as the instructions given were in accordance with our own rulings, and left all facts fairly to the jury, there was nothing to complain of on this head, unless, as plaintiff's counsel distinctly claimed on the argument, townships should be held liable at all events as insurers, and not merely for neglect of duty. There is no authority, under the statute or otherwise, for any such extreme view; and we do not see how the various questions could properly have been taken from the jury, as plaintiff claimed they should have been.

Objection is made that the court erred in excluding evidence of a settlement made by defendant with one Bell, who was injured at the same time and who had charge of the engine when it fell. But inasmuch as plaintiff was a stranger to that transaction it could have no bearing on this controversy. A compromise with one person is in no sense legally an admission of any liability to some one else.

The court admitted full testimony concerning the exact condition of the bridge at the time of and after the accident. Among this proof was testimony showing that chains and other appliances were fixed upon various parts of the bridge. Plaintiff then proposed to ask witnesses why these chains were used, but this was held irrelevant. This ruling was correct. The fact that after the accident precautions were taken does not indicate that any knowledge of the propriety of such precautions was had before the accident. Proof was not excluded of the real condition of the bridge, and the jury had means of understanding that and all its appearances.

Neither was it material to know what new methods have been found desirable in bridge building, unless it is shown that these methods were such that defendant was at fault for not knowing and using them before. But it is questionable whether any point of this kind falls within any of the assignments of error, and we need spend no time upon it, as no offer was made to show any specific fault of this

nature beyond what was fully covered by the general instructions on the case as presented.

A point was made upon certain rulings which allowed the jury to consider whether the weight of the engine in question, with its accompaniments, was such as might reasonably be anticipated as likely to be placed on the bridge when it was built, and whether any such use should have been reasonably anticipated when the authorities planned it and provided for its completion.

It is claimed by plaintiff that inasmuch as the engine might lawfully be used on the highways, it was the duty of the township to have its bridges built and equipped so as to accommodate it.

There is some plausibility in this claim, but it goes further than the law will warrant. It has always been held that there is necessarily room for some discretion in determining what plans shall be adopted for public ways and their surroundings. There never was, and there is not now, any legal obligation on municipalities to build bridges where no bridges ever stood before, except under conditions and restrictions recognized by law or by the Constitution. The amount of money which can be raised to aid townships in building bridges which they cannot afford to build without aid is limited by the Constitution. Previous to the law of 1879 the limit was also fixed for money to be raised either for building or repairing. While, possibly, it was necessary that every bridge undertaken should be reasonably fitted and entirely safe, as far as could be secured, for such uses as it was apparently or really designed to subserve, yet it does not follow that every bridge must be adapted for all possible purposes. If a foot bridge could be afforded and a bridge for all traffic could not be afforded, it would be hard to say that the town must build the larger bridge or have none at all. And on the same principle it is reasonable to hold that in determining to build a bridge for general uses, it cannot be expected that the designers will anticipate uses which have not been known, and necessities which are not within ordinary experience. It cannot be a

legal wrong to build according to the light of the times when the building is done. The law of 1879 [How. St. §§ 1442–6] does not require changes to be made in the plan of existing bridges. When it requires repairs it may fairly be construed as requiring bridges to be put in as good a condition of strength and soundness as would make them as secure as new bridges of the same kind and plan. But it does not require a different structure.

In this case there was testimony showing that from its peculiar position with steep approaches, there was no likelihood that very heavy loads could be placed on it without the use of extra teams, which it could not be supposed would be used. It also was shown that up to this time the bridge had been safely crossed for several years, and up to the day of the accident by the heaviest loads drawn over the road, exceeding in some recent instances any ordinary burdens. It was not improper for the jury to consider all these things in determining how far the town was at fault in not planning a heavier structure. We notice no other points which are not, in our opinion, within the spirit of *Perkins v. Medina.*

The judgment must be affirmed with costs.

The other Justices concurred.