MAKI *v.* CITY OF EAST TAWAS

OPINION OF THE COURT

1. NUISANCE—WORDS AND PHRASES—CLASSES.

Nuisances resulting in personal injury fall into three general classes: (1) nuisances which result from conduct which is in itself a violation of law, (2) nuisances which are intentional, and (3) nuisances which have their origin in negligence.

REFERENCES FOR POINTS IN HEADNOTES

[1] 39 Am Jur, Nuisances § 2.
[2–5] 39 Am Jur, Nuisances § 200.
[6] 39 Am Jur, Nuisances § 4.
[7] 39 Am Jur, Nuisances § 145.
[8] 39 Am Jur, Nuisances § 23.
[9, 15] 50 Am Jur, Statutes § 183 *et seq.*
[10] 22 Am Jur 2d, Damages § 342.
[11] 5 Am Jur 2d, Appeal and Error § 1009.
[12] 52 Am Jur, Torts § 2 *et seq.*
[13] 50 Am Jur, Statutes § 217 *et seq.*
[14, 16–18] 52 Am Jur, Torts § 100.
[19] 39 Am Jur, Nuisances §§ 94, 95.

2. NEGLIGENCE—NUISANCE—CONTRIBUTORY NEGLIGENCE.

Negligence consists in a failure to exercise due care, and contributory negligence is for that reason an appropriate defense to a nuisance grounded on negligence.

3. NEGLIGENCE—NUISANCE—CONTRIBUTORY NEGLIGENCE—TRIAL.

A court may charge a jury that a nuisance might have its origin in negligence, and that if the jury so found, contributory negligence would be a defense which the jury must consider.

4. NEGLIGENCE—NUISANCE—CONTRIBUTORY NEGLIGENCE.

Contributory negligence is generally a defense to an action for nuisance that has its origin in negligence.

5. NUISANCE—CLASSIC NUISANCE—CONTRIBUTORY NEGLIGENCE.

An action for a "classic" or "absolute" nuisance, to which contributory negligence is not a defense, arises when one so uses his land as to cause unreasonable interference with the use and enjoyment of the land of another.

6. PLEADING—NUISANCE—NEGLIGENCE—MUNICIPAL CORPORATIONS.

Suit against a city for damages arising from the loss of an eye resulting from an explosion while plaintiff was at a municipal dump stated a cause of action in nuisance even though the allegations related solely to negligence.

7. NUISANCE—EXPLOSION—MUNICIPAL CORPORATIONS—JURY QUESTION.

The question of whether there was an intentional nuisance was properly left to a jury in a case where an explosion at a municipal dump resulted in the loss of plaintiff's eye.

8. TORTS—WORDS AND PHRASES—INTENTIONAL TORTS—NEGLIGENCE.

Negligence is a kind of tort but there are also intentional torts not based on negligence.

9. CONSTITUTIONAL LAW—STATUTES—GOVERNMENTAL IMMUNITY—MUNICIPAL CORPORATIONS.

A *section of a statute which provides that all governmental agencies shall be immune from "tort liability" while engaged in the exercise and discharge of a governmental function held, unconstitutional, since the section refers to "tort liability" and is broader in scope than the title of the act which refers to "negligence"* (Const 1963, art 4, § 24; MCLA § 691.1407).

10. DAMAGES—LOSS OF EYE.

   A verdict of $12,500 for loss of an eye is within a jury's discretion and such a verdict cannot be said to shock the judicial conscience, nor to be erroneous as a matter of law.

11. COSTS—PUBLIC QUESTION—STATUTE.

   No costs are allowed on appeal in action to determine the constitutionality of one section of a state statute, a public question being involved (MCLA § 691.1407).

DISSENTING OPINION
LEVIN, P. J.

12. TORTS—WORDS AND PHRASES—TORT LIABILITY—NEGLIGENCE LIABILITY.

   *The term "tort," in its generally accepted meaning, includes wrongs caused by acts or omissions that are not negligent; but it is also commonplace to refer to liability for negligence as tort liability and the phrase "tort liability" is, in many everyday usages, synonymous with negligence liability.*

13. CONSTITUTIONAL LAW—STATUTES.

   *The Court of Appeals has a duty to sustain the constitutionality of a statute if it can and, to that end, the language used should, if possible, be construed to preserve the statute's constitutionality.*

14. CONSTITUTIONAL LAW—TORTS—LIABILITY—NEGLIGENCE—GOVERNMENTAL IMMUNITY—STATUTES—INTERPRETATION.

   *The words "tort liability," which appear in a statute providing governmental immunity from tort liability, should be read as meaning liability for negligence, where the title of the act states that it is an act to make uniform the liability of governmental agencies for injuries to property and persons caused by negligence, since not to so read these words judicially defeats the legislative purpose. (Const 1963, art 4, § 24; MCLA § 691.1407).*

15. CONSTITUTIONAL LAW — STATUTES — INTERPRETATION — NARROW CONSTRUCTION.

   *Courts, when confronted with a claim that the body of a statute exceeded its title, should adopt a narrow construction of the statute so that its content would not exceed its title, so that the act's constitutionality will be preserved (Const 1963, art 4, § 24).*

16. Torts — Municipal Corporations — Liability — Proprietary Function.

> *Municipal corporations and other governmental agencies have been liable for a long time for tortious conduct arising out of the performance of a proprietary function.*

17. Nuisance — "Classic" Nuisance — Common Law — Governmental Immunity.

> *The common law of governmental immunity did not insulate governments against a "classic" nuisance action, that is, an action for invasion of an interest in land.*

18. Nuisance—Governmental Agencies—Negligence.

> *Governmental agencies are liable for the commission of "classic" nuisances or so-called direct trespasses causing loss suffered on, or affecting a defendant's land or on the public way without regard to whether an act or omission causing a nuisance is intentional or negligent.*

19. Nuisance—Garbage Dumps.

> *Garbage dumps have been held to be nuisances.*

Appeal from Iosco, Allan C. Miller, J. Submitted Division 3 February 12, 1969, at Grand Rapids. (Docket Nos. 5,030, 5,371.) Decided June 25, 1969. Leave to appeal granted February 10, 1970. See 383 Mich 766.

Complaint by Leo V. Maki against the City of East Tawas, a municipal corporation, for the loss of an eye resulting from an explosion at the municipal dump. Judgment for plaintiff. Defendant appeals. Plaintiff appeals from denial of his motion for a new trial. Affirmed.

*Cicinelli, Mossner, Majoros, Harrigan & Alexander,* for plaintiff.

*Michael N. Freel,* City Attorney, and *Egloff, Mainolfi, Taylor, McGraw & Collison,* for defendant.

*Amici Curiae:*

Rita Jane Petz, Executrix of the estate of Joseph E. Pitz, deceased (by *Roach, Twohey & Benson*).

Michigan Association of Municipal Attorneys (by *Ralph B. Guy, Jr.*, Corporation Counsel, City of Dearborn; *Leonard McKee Moore*, Assistant Corporation Counsel, City of Dearborn; *Charles A. Forrest, Jr.*, City Attorney, City of Flint; *W. Vincent Nash*, City Attorney, City of Saginaw; *Robert Reese*, Corporation Counsel, City of Detroit; and *Robert D. McClear* and *Ronald C. Winiemko*, Assistant Corporation Counsels, City of Detroit).

Before: LEVIN, P. J., and HOLBROOK and DANHOF, JJ.

DANHOF, J. Plaintiff[1] sued defendant, city of East Tawas, for damages arising from the loss of an eye resulting from an explosion while he was at the East Tawas municipal dump on December 4, 1965. The claim was originally based upon negligence, but additional counts of gross negligence and nuisance were later added. The defendant filed a motion for an accelerated judgment asserting that PA 1964, No 170, § 7 (MCLA § 691.1407 [Stat Ann 1969 Cum Supp § 3.996(107)]), relative to governmental immunity, bars the cause of action. The circuit judge denied the defendant's motion stating that the aforesaid § 7 was unconstitutional as it did not fall within the object embraced in the title of the act and, therefore, defendant was not immune from such suit. The case proceeded to a jury trial solely on the theory of nuisance, after plaintiff voluntarily struck his allegations of negligence and gross negligence from the complaint, and a verdict was rendered in favor of plaintiff in the amount

---

[1] During the pendency of these causes plaintiff Leo V. Maki died and by order of this Court Virginia Maki, administratrix of the estate of Leo V. Maki, deceased, was substituted as party plaintiff. When plaintiff is mentioned in this opinion, reference is to the original plaintiff, Leo V. Maki.

of $12,500, plus costs. From this judgment defendant appealed, alleging the trial court erred in ruling that defendant was not immune from suit. In addition, the plaintiff filed a motion for a new trial alleging the verdict was grossly inadequate and from the denial of his motion, the plaintiff appealed. Subsequently, the two appeals were consolidated.

On appeal, the first question to be answered is whether plaintiff's nuisance suit was well-founded. The city argues that plaintiff's cause of action was founded upon nothing more than negligence in the operation of its dump, and that such cause of action was barred by PA 1964, No 170, § 7.

In support of this position defendant points out that plaintiff initially claimed ordinary negligence in his complaint, then by amendment added gross negligence and nuisance, later voluntarily abandoning the negligence theories and proceeding to trial on a nuisance theory only—all without change in the allegations.

As authority the defendant cites *Royston* v. *City of Charlotte* (1936), 278 Mich 255, 260, where the court enunciates the following legal proposition:

. "Acts in the discharge of governmental functions which create a nuisance *per se* do not come within the immunity otherwise accorded. Want of care in maintenance, however, presents the question of negligence only, and not that of a public nuisance, which must rest on inherent danger even under the best of care."

Since the *Royston Case, supra,* we have the case of *Denny* v. *Garavaglia* (1952), 333 Mich 317, which clearly recognizes three categories of nuisance, the last one based on negligence. At p 331 the Court quoted from *Beckwith* v. *Town of Stratford* (1942), 129 Conn 506 (29 A2d 775), wherein the court had

occasion to discuss the elements constituting nuisances.  The quotation follows:

" 'Apart from nuisances which have their origin in accident, nuisances resulting in personal injury fall into three general classes.  Beven, Negligence (4th ed), p 426, note.  One class includes nuisances which result from conduct which is in itself a violation of law, and as to them it has been held on high authority that contributory negligence is not a defense, *Delaney* v. *Philhern Realty Holding Corporation* (1939), 280 NY 461, 465 (21 NE2d 507); but with such nuisances we have no concern in this case. A second includes nuisances which are intentional, using that word as meaning not that a wrong or the existence of a nuisance was intended but that the creator of them intended to bring about the conditions which are in fact found to be a nuisance.  The other class includes nuisances which have their origin in negligence, which in its essence is an absence of care.  Nuisances falling in the second class are those which we characterize as absolute and against which contributory negligence is not a defense.  To hold that contributory negligence should not be a defense as regards them and should be as to the last class of nuisances rests upon the essential difference in the nature of the wrong committed.  Negligence consists in a failure to exercise due care, and to a nuisance grounded on negligence, contributory negligence is for that reason an appropriate defense.  Winfield, Torts, p 501.  Where, however, the essence of the wrong is conduct which is intentional, in the sense in which we have used that word, that conduct goes beyond a mere lack of proper care, and there is not the same balance of obligation between the duty of one person to guard another from an injury from such a lack and the duty of the other not to fail to exercise a like care in his own protection.  See Bohlen, Studies in the Law of Torts, p 527.  The fact that contributory negligence is not a defense as against reckless mis-

conduct presents a somewhat analogous situation.' "
(Citations omitted.)

The Court in the *Denny Case* then held:

"The record supports the finding of the trial court
that the nuisance was created through acts of negli-
gence on the part of Garavaglia."

Again in the case of *Dahl* v. *Glover* (1956), 344
Mich 639, 644, 645, the Court recognized that a
nuisance might have its origin in negligence for
the Court said:

"We are not in accord with appellant's claim that
the court erred in charging the jury that they might
find the maintaining of a nuisance created by negli-
gence; or that the court 'improperly injected [the
question of negligence] into the case.' The court
charged the jury that a nuisance might have its
origin in negligence, and charged that if the jury
so found, contributory negligence would be a good
defense which the jury must consider.

"The charge as a whole was proper. *Denny* v.
*Garavaglia* (1952), 333 Mich 317; *Brown* v. *Nichols*
(1953), 337 Mich 684."

Also, in the case *Young* v. *Groenendal* (1968) 10
Mich App 112, the general rule that contributory
negligence is available as a defense to an action
based on a nuisance where the nuisance is caused
by negligent conduct was recognized. The Court
said:

"The Supreme Court of Michigan has stated that
as a general rule contributory negligence is avail-
able as a defense to an action based on a nuisance
where the nuisance is caused by negligent conduct.
*Denny* v. *Garavaglia* (1952), 333 Mich 317. The rule
is *contra* by the established weight of authority
when there is a 'classic' or 'standard' or 'absolute'
nuisance involved. See 73 ALR2d 1381. The latter

type nuisance arises when one so uses his land as to cause unreasonable interference with the use and enjoyment of the land of another. The classic nuisance is not in question here because there are no conflicting real property interests being asserted.

"Whether the source of a nuisance action is really negligence requires attentiveness to all the facts of the action. In *Dahl* v. *Glover* (1956), 344 Mich 639, the Supreme Court, relying on *Denny* v. *Garavaglia, supra,* held that a jury charge on contributory negligence as a defense to be considered by the jury was proper although plaintiff, at the close of her evidence, withdrew her count in negligence and relied solely on her count in nuisance. In the instant case, *with no change in the facts alleged to support the cause of action, plaintiff amended his complaint to read nuisance instead of negligence.* As in *Dahl* v. *Glover, supra,* the trial court may and should penetrate the formal label to discover the actualities of the case." (Emphasis supplied.)

The brief *amicus curiae* of the Michigan Association of Municipal Attorneys which argues in support of the defendant city's position that nuisance cannot be based on negligence alone cites the case of *Awad* v. *McColgan* (1959), 357 Mich 386. However, this case is distinguishable from the preceding cases because the action sounded in contract rather than in tort. The Court specifically recognized the negligence-nuisance type of action at p 390 where it said:

"We do not hold that the negligence-nuisance type of action referred to above may never be brought. In a proper case it may be, and, if so, it partakes of the essentials of a negligence action, including such defenses as that of contributory negligence. (See annotation, 57 ALR 7.) The name (negligence or nuisance) does not control the result. The point is, however, that the gravamen of the

action must sound in tort and a landlord's breach of promise to repair does not so sound."

Thus, this Court concludes that the *Royston Case, supra,* insofar as it holds that want of care in maintenance presents a question of negligence only, and not that of a public nuisance, has been overruled indirectly by subsequent cases, *Denny, Dahl, Young, supra,* and that the plaintiff has stated a cause of action in nuisance even though the allegations relate solely to negligence.

Further, we hold that contributory negligence is available as a defense in such a case; to wit, where the nuisance giving rise to the cause of action is based on negligent conduct. *Young* v. *Groenendal, supra, Denny* v. *Garavaglia, supra,* and *Dahl* v. *Glover, supra.*

Plaintiff vigorously contends that the instant case is within the first or second categories as quoted in the *Denny Case, supra.* We cannot agree that it is in the first category—namely, nuisances which result from conduct which is a violation of law even though the act referred to, PA 1965, No 87 (MCLA § 325.291 *et seq.* [Stat Ann 1969 Cum Supp § 14.435(1) *et seq.*]) was given immediate effect June 28, 1965, and the injury in question occurred December 4, 1965, because the statute did not prohibit open dumps, but rather it required licensing. Further, the rules and regulations promulgated to implement this licensing and regulating act had not been published at the time of the injury, as required by PA 1943, No 88, § 4, as amended by PA 1964, No 161, (MCLA § 24.74 [Stat Ann 1969 Cum Supp § 3.560 (10)]) which is a condition precedent to their being effective, nor had they been given immediate effect by the governor as authorized by § 5 of the fore-

going act (MCLA § 24.75 [Stat Ann 1961 Rev
§ 3.560(11)]).[2]

With regard to the second category, nuisances
which are intentional, we think the trial judge prop-
erly left this question to the jury which held unan-
imously on a special finding that there was no inten-
tional nuisance, but held by a vote of ten to two that
there was a nuisance arising out of the manner of
operation, in other words negligence. *Dahl* v.
*Glover, supra.*

We come now to the constitutional question. Is
recovery barred by PA 1964, No 170, § 7, or, in the
alternative, is § 7 unconstitutional?

Section 7 states:

"Except as in this act otherwise provided, all
governmental agencies shall be immune from tort
liability in all cases wherein said government
agency is engaged in the exercise and discharge of
a governmental function. Except as otherwise pro-
vided herein, this act shall not be construed as
modifying or restricting the immunity of the state
from tort liability as it existed heretofore, which
immunity is hereby affirmed."

There is no question but what the legislature has
the authority to adopt this type of legislation,
*Williams* v. *City of Detroit* (1961), 364 Mich 231.
Nevertheless, the legislature cannot exercise this
authority in a manner which violates the prohibi-
tions expressed in Const 1963, art 4, § 24. That
section provides:

"No law shall embrace more than one object,
which shall be expressed in its title. No bill shall

---

[2] Rule numbers 325.1101–325.1110, promulgated pursuant to PA
1965, No 87, were filed with the Secretary of State November 23,
1965 at 4:15 p.m. They were published in the Michigan Administra-
tive Code Quarterly Supplement 45 on February 14, 1966.

be altered or amended on its passage through either house so as to change its original purpose as determined by its total content and not alone by its title."

Therefore, this Court must decide whether PA 1964, No 170, § 7, embraces an object not expressed in its title.

The title to the act reads:

"An act to make uniform the liability of municipal corporations, political subdivisions, and the state, its agencies and departments, when engaged in a governmental function, for injuries to property and persons *caused by negligence;* to define and limit such liability; to define and limit the liability of the state when engaged in a proprietary function; to authorize the purchase of liability insurance to protect against loss arising out of such liability; to provide for defending certain claims made against public officers and paying damages sought or awarded against them; and to repeal certain acts and parts of acts." (Emphasis supplied.)

Specifically, since the title refers to "negligence" whereas § 7 refers to "tort liability," is § 7 unconstitutional because broader in scope than the title? There is no doubt that negligence is a kind of tort, but there are also intentional torts not based on negligence. Thus, on its face the section is not included in the title.

However, the variety of the Michigan judicial decisions of the past decade dealing with governmental immunity resulted in the legislature deciding to adopt this act to make uniform the liability of governmental agencies. If at all possible, such obvious legislative intent should not be thwarted by a ruling that § 7 is unconstitutional.

The history of governmental immunity in Michigan is now divided into pre-*Williams* and post-*Williams* law. In the landmark case, *Williams* v.

*City of Detroit, supra,* our Supreme Court wrote three fascinating but differing opinions, the ultimate effect of which was to overrule prospectively the common-law rule that cities while performing a governmental function are immune from liability for negligence. The trial judge in that case, Victor J. Baum, later wrote an article entitled "Governmental Immunity in Michigan—Some Recent Developments" which was printed in the Michigan State Bar Journal, May 1965, pp 37–48, wherein he summarized the pre-*Williams* law as follows:

"To put the pre-*Williams* law in a nutshell, the picture was one of near-total immunity for all levels and agencies of government while engaged in a governmental function. By legislation there were small areas of exposure for injuries resulting from defective maintenance of public roads and from negligent operation of autos and airplanes.

"With respect to road maintenance, only the lesser levels of government had exposure. The state continued to be immune.

"Also there were the tiny judge-made islands of exposure for direct trespassory act and nuisance.

"There was another rather large judge-made area of exposure arising out of proprietary activity and this exposure extended to all levels of government, including the state."

The *Williams Case, supra,* was followed the same year by *McDowell* v. *State Highway Commissioner* (1961), 365 Mich 268, in which the Supreme Court held that insofar as the state is concerned, the doctrine of immunity of state government, as it presently exists in Michigan, is a creature of the legislature, based on a pattern of deliberate legislative choices, which cannot be altered by the Court.

Additionally, the Supreme Court held in *Sayers* v. *School District No. 1, Fractional* (1962), 366 Mich 217, that school districts have immunity as

agencies of state government, and in *Myers* v. *Genesee County Auditor* (1965), 375 Mich 1 the Supreme Court said that counties, townships and villages do not have governmental immunity when engaged in a governmental function. Along the way, there were the holdings in *Lewis* v. *Genesee County* (1963), 370 Mich 110, *Munson* v. *County of Menominee* (1963), 371 Mich 504, and *Sherbutte* v. *City of Marine City* (1964), 374 Mich 48, which further defined the application of the law of governmental immunity.

It is against this now historic judicial setting that the legislature adopted PA 1964, No 170, in an attempt to make uniform the liability of governmental agencies when engaged in governmental functions.

Attorneys *amicus curiae* have vigorously argued the position that PA 1964, No 170, § 7, grants all governmental agencies immunity from *all* tort liability when engaged in the exercise and discharge of a governmental function and does not violate Const 1963, art 4, § 24, despite the fact that the title of that act is limited to negligence.

First, it is contended that the last part of art 4, § 24,[3] namely, "as determined by its total content and not alone by its title," which language was not in the 1908 Constitution, provides a strong rationale for the position that PA 1964, No 170, § 7, is a valid includable part of the original legislative intent and purpose.

The answer to that contention is that two distinct prohibitions are stated in § 24. The new language modifies the subject, "bill," in the second sentence and does not affect the meaning of the first sentence where the subject is "law."

---

[3] The comparable prohibitions in the Michigan Constitution of 1908 are in art 5, §§ 21, 22.

Further, arguing that if one can find the object of a statute by reading the title *and* the act, then the object is fairly reflected therein and so no one is misled by a title which does not state the object accurately, is circular reasoning.

*Amici curiae* seek to find additional comfort in the opinion of Justice BRENNAN in *Smith* v. *Ginther* (1967), 379 Mich 208. It is sufficient answer for this Court to point out that Justice BRENNAN's opinion was the dissenting opinion, and, furthermore, was not directed to the question of constitutionality.

Additionally, it is questionable whether the legislature meant to grant immunity from all tort liability in § 7. As pointed out previously[4] some exceptions to governmental immunity existed even in pre-*Williams* times, two of them being in the areas of direct trespassory acts and nuisance.

We think that the constitutionality of § 7 cannot be sustained if it is construed as applying to all tort liability when the title is limited to negligence. We agree with the point made in the brief on behalf of the intervenor that legislators might have been misled by the title into voting affirmatively, thinking that immunity from liability for negligence desirable, yet not wishing to go so far as to grant immunity from assault and battery, false arrest, invasion of privacy, direct trespass, nuisance, and other torts. *Vernor* v. *Secretary of State* (1914), 179 Mich 157, 160; *Leininger* v. *Secretary of State* (1947), 316 Mich 644, 649; *Continental Motors Corporation* v. *Township of Muskegon* (1965), 376 Mich 170, 179.

There remains the possibility of limiting § 7 to tort liability "based on negligence." By statutory construction this Court might conceivably read in

---

[4] See Judge Baum's article, *supra.*

the words "based on negligence," thereby limiting § 7 so that it is not broader in scope than the title.

If this Court were to read into § 7 the words "based on negligence" this might bar plaintiff's recovery as his cause of action in nuisance is actually based on allegations of negligence. None of the cases relative to nuisance cited at p 38 in Judge Baum's article, *supra,* involve a nuisance based on negligence nor a governmental body, so the courts were not presented with the governmental immunity question. Since the Supreme Court has definitely made a distinction between nuisance based on negligence and other kinds of nuisance when the defense of contributory negligence was involved (*Denny, Dahl, Young, supra*), it is reasonable and consistent to make such a distinction between nuisance arising out of negligence and other types of nuisance when making exceptions to the rule of governmental immunity. To hold otherwise would be illogical, since the *same* facts may support a cause of action in nuisance created by negligence as support a cause of action in negligence.

The trial judge considered and rejected this possibility as "a strained construction" and "extreme judicial legislation." With this view, this Court agrees.

The trial judge concluded that § 7 was severable from the remainder of the act and struck it as unconstitutional. While we affirm his opinion, we do not imply that none of the other sections might not violate Const 1963, art 4, § 24. For the purposes of this case, we deem it unnecessary to rule on the constitutionality of each of the sections of PA 1964, No 170.

We turn now to the question of adequacy of the verdict which plaintiff raised in his appeal. The trial judge in ruling on plaintiff's motion for new trial and additur found that the plaintiff was a

married man without minor children, 59 years of age, who lost less than 30 days of work as a result of the accident and at the time of the trial was on the same job that he had previously held. Plaintiff's foreman testified that he was a good worker and that he intended to continue him in his employ. The testimony indicated that his take home pay was $78 per week before the accident and was slightly higher at the time of trial. The out-of-pocket medical and hospital expense was $784.44. This together with the wage loss totaled $1,096.44. There was in addition, earning capacity damage, pain and suffering, and permanent injury to be considered.

The trial court then held that the verdict of $12,500 was within the jury's discretion, citing from 11 ALR3d 461 as follows:

" '[d] Adequate

— $18,677 to man assaulted with pitchfork; loss of one eye; fractured nose; dental bridgework destroyed; laceration of face; no showing of permanent loss of earning capacity. *Dowd* v. *Webb* (CA3 1964), 337 F2d 93.

" '[e] Inadequate

— $6,000, increased to $12,000; 30-year-old, semi-skilled workman earning about $250 per month; loss of left eye. *Tyler* v. *United States Casualty Company* (La App, 1961), 127 So 2d 804.' "

The court further stated that the verdict could not be said to shock the judicial conscience, nor to be erroneous as a matter of law.

Under these circumstances, this Court will not say that the jury and trial judge were in error. See *Teller* v. *George* (1960), 361 Mich 118; *Osberry* v. *Watters* (1967), 7 Mich App 258.

Affirmed with no costs, a public question being involved.

HOLBROOK, J., concurred.

LEVIN, P. J. *(dissenting)*.  I cannot agree with the majority's disposition of this case.

The plaintiff commenced this action to recover for personal injuries sustained while he was at a garbage dump operated by the defendant.  He obtained a jury verdict.

The defendant, a municipal corporation, claimed immunity under recently enacted PA 1964, No 170.[1] Section 7 of this act[2] immunizes governmental agencies from tort liability when engaged in the exercise and discharge of a governmental function[3] with exceptions not here pertinent (see footnotes 10 and 19).

The plaintiff challenged the defendant's claim of immunity on the ground that the act violates the one-object-expressed-in-its-title provision of Michigan's constitution.  Const 1963, art 4, § 24.[4]

The trial judge and the majority of this Court have adopted the plaintiff's argument.[5]  Section 7

---

[1] MCLA §§ 691.1401–691.1415 (Stat Ann 1968 Cum Supp §§ 3.966 [101]–3.966[115]).

[2] "Sec. 7.  Except as in this act otherwise provided, all governmental agencies shall be immune from tort liability in all cases wherein said governmental agency is engaged in the exercise and discharge of a governmental function.  Except as otherwise provided herein, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed heretofore, which immunity is hereby affirmed."  MCLA § 691.1407 (Stat Ann 1968 Cum Supp § 3.996[107]).

[3] It has not been asserted that the operation of the city dump constituted the exercise of a proprietary (see footnote 16) rather than a governmental function.  See *Curry v. City of Highland Park* (1928), 242 Mich 614.

[4] "No law shall embrace more than one object, which shall be expressed in its title.  No bill shall be altered or amended on its passage through either house so as to change its original purpose as determined by its total content and not alone by its title."

[5] I agree with the majority in rejecting the defendant's contention that the first sentence of art 4, § 24, as well as the second sentence, is modified by the following clause added to the second sentence in the 1963 Constitution: "as determined by its total content and not alone by its title."

The convention comment states that the 1963 Constitution was "a revision combining parts of §§ 21 and 22, art 5, of the present [1908]

of this act is held to be unconstitutional because it
provides that governmental agencies "shall be im-
mune from *tort* liability" when discharging a gov-
ernmental function whereas the title of the act[6]
more narrowly states that it is an act to make
uniform the liability of governmental agencies for

---

Constitution. No substantive change is involved." See *United
States Gypsum Company* v. *Department of Revenue* (1961), 363 Mich
548 (majority opinion of EDWARDS, J. and dissenting opinion of
BLACK, J.).

The second sentence of present § 24 expresses a different concept
than the first sentence of that section, a difference which was en-
tirely clear when the two sentences were in two different sections
of the Constitution but which now may have been somewhat ob-
scured by the inclusion of both concepts in the same section. A
function of the first sentence is to alert the members of the legis-
lature and the public to the fact that legislation concerning a
particular object has been introduced. The purpose of a bill may,
however, be narrower than the object expressed in its title. The
function of the second sentence is to prevent a change in purpose
after introduction.

The first sentence concerns *laws*. The second sentence concerns
*bills*. Even if the original purpose of a bill as introduced is not
altered or amended in its passage through the house it is unconsti-
tutional if its object is not expressed in its title. A construction of
the language added by the 1963 Constitution to the second sentence
which would allow the total content of a law to be considered in de-
termining whether its object has been expressed in its title would
make altogether superfluous the first sentence, thereby effecting (con-
trary to the convention comment) a fundamental substantive change.
If we could look at the total content of a law in deciding whether
that content is expressed in its title, no law could fail to express its
object in its title as so supplemented by the "total content." Clearly
the "total content" cannot be considered in passing on a claim that
the law violates the requirement that the object of a law must be
expressed in the title.

Only where it is asserted that the original *purpose* of a bill has
been changed by alteration or amendment after its introduction and
before passage may reference be made to the total content.

6 The title of PA 1964, No 170, reads:
"An act to make uniform the liability of municipal corporations,
political subdivisions, and the state, its agencies and departments,
when engaged in a governmental function, for injuries to property
and persons caused by negligence; to define and limit such liability;
to define and limit the liability of the state when engaged in a pro-
prietary function; to authorize the purchase of liability insurance
to protect against loss arising out of such liability; to provide for
defending certain claims made against public officers and paying
damages sought or awarded against them; and to repeal certain acts
and parts of acts."

injuries to property and persons caused by *negligence*. (Emphasis supplied.)

My colleagues point out that there are intentional as well as negligent torts. The term "tort," in its generally accepted meaning, does, of course, include liability for wrongs caused by acts or omissions that are not negligent, with the result, in this analysis, that § 7 of the act purports to exempt governmental agencies from liability for wrongs not described in the act's title. But it is also commonplace to refer to liability for negligence as tort liability and, thus, the phrase "tort liability" is, in many every day usages, synonymous with negligence liability.

Governmental immunity from liability for tortiously caused personal injury and property damage is contrary to the spirit of the times and is slowly being whittled away by judicial decision and legislative action across the country.[7] However, the Michigan legislature opted for a codification of this immunity when, in 1964, it passed this act.

It is our duty to sustain the act's constitutionality if we can and, to that end, the language used should, if possible, be construed to preserve its constitutionality. The legislature clearly intended to deal with at least that which is headnoted in the title, namely, the liability of governmental agencies for injuries to property and persons caused by negligence. It is, therefore, not judicial legislation to read the words "tort liability" in the first sentence of § 7 as meaning liability for negligence; that much

---

[7] *Sovereign Immunity and Public Responsibility,* U Ill L F 795, particularly pp 979, 980 (1966); Littlefield, *Stare Decisis, Prospective Overruling, and Judicial Legislation in the Context of Sovereign Immunity,* 9 St Louis U L J 56 (1964); James G. Hamill, *The Changing Concept of Sovereign Immunity,* 13 Defense L J 653 (1964); also authorities mentioned in footnote 28. A comprehensive scholarly critique of the doctrine will be found in Borchard, *Governmental Liability in Tort* (pts 1–3), 34 Yale L J 1, 129, 229 (1924, 1925); Borchard, *Governmental Responsibility in Tort* (pts 1–3), 36 Yale L J 1, 757, 1039 (1926, 1927).

the legislature clearly intended.  Indeed, not to so read these words judicially defeats the legislative purpose.

In several cases where the Michigan Supreme Court was confronted with the claim that the body of a statute exceeded its title the Court adopted a narrow construction of the statute so that its content would not exceed its title.[8]  That is what we can appropriately do and, having in mind our duty to preserve the act's constitutionality, that is what we should do in this case.

Limiting the first sentence of § 7 to liability for negligence does not create any incongruity in the act read as a whole:

Section 1[9] contains definitions; none relate to the issues before us.

Sections 2 through 6[10] and § 8[11] concern governmental liability for failure to exercise due care, *i.e.*, negligence.[12]

---

[8] *Arnold* v. *Ogle Construction Company* (1952), 333 Mich 652, 663; *Scott* v. *Alsar Company* (1953), 336 Mich 532, 539; *Booth* v. *Eddy* (1878), 38 Mich 245; *Rogers* v. *Kent Board of County Road Commissioners* (on rehearing) (1943), 319 Mich 661, 668, 673.  *Cf. People* v. *Smith* (1929), 246 Mich 393, 397; *American Baptist Missionary Union* v. *Peck* (1862), 10 Mich 341, 348; *Bates* v. *Nelson* (1882), 49 Mich 459, 462.

[9] MCLA § 691.1401 (Stat Ann 1968 Cum Supp § 3.996[101]).

[10] Section 2 provides that "each governmental agency having jurisdiction over any highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel."  MCLA § 691.1402 (Stat Ann 1968 Cum Supp § 3.996[102]).  Section 3 states that no governmental agency shall be liable for injuries or damages caused by "defective highways" unless the governmental agency knew or in the exercise of reasonable diligence should have known of the existence of the defect and had reasonable time to repair it before the injury took place.  MCLA § 691.1403 (Stat Ann 1968 Cum Supp § 3.996[103]).  Section 4 requires a written notice within 60 days from the time of the injury as a condition to any recovery for injury sustained by reason of any "defective highway."  MCLA § 691.1404 (Stat Ann 1968 Cum Supp § 3.996[104]).  Section 5 provides that governmental agencies shall be liable for injuries and damages resulting from the "negligent operation" by governmental employees of a motor vehicle owned by the governmental agency.  MCLA § 691-.1405 (Stat Ann 1968 Cum Supp § 3.996[105]).  Section 6 imposes

The second sentence of § 7 (see footnote 2) states a rule of construction. Unlike the first sentence of § 7, the second sentence does not purport to change existing law.[13]

---

upon governmental agencies the obligation to repair and maintain public buildings under their control and open for use by members of the public and provides that governmental agencies are liable for injury and damage resulting from "dangerous or defective condition" of a public building if the agency had actual or constructive knowledge of the defect and for a reasonable time after acquiring knowledge failed to remedy the condition or to take action "reasonably necessary" to protect the public against the condition. MCLA § 691.1406 (Stat Ann 1968 Cum Supp § 3.996 [106]).

[11] Section 8 provides that governmental agencies are authorized to engage attorneys to represent officers or employees of a governmental agency in actions for injury "caused by negligence" of the officer or employee while in the course of his employment and while acting within the scope of his authority. The second sentence of § 8 provides that the governmental agency may indemnify the officer or employee as to a judgment for damages awarded against him "as a result of any civil action for personal injuries or property damage." Clearly the second sentence could well be construed as limited to that which is implied in the first sentence, i.e., actions for personal injuries or property damage "caused by negligence." MCLA § 691.1408 (Stat Ann 1968 Cum Supp § 3.996 [108]).

[12] The language of §§ 2 through 4 parallels CL 1948, § 242.1 et seq., which was repealed by § 14 of act 170 (MCLA § 691.1414 [Stat Ann 1968 Cum Supp § 3.996(114)]). Section 6 follows the format of sections 2 through 4. Time does not permit an examination of the large number of cases decided under CL 1948, § 242.1 et seq. or under companion and still operative CL 1948, § 224.21 (Stat Ann 1958 Rev § 9.121) but it would appear that the gist of the former statutory action for injury caused by a defective highway was negligence. The cases are collected in volumes 6 and 6A, CL 1948 (Case Annotations) §§ 224.21, 242.1 et seq.; see *Fulton Iron & Engine Works* v. *Township of Kimball* (1883), 52 Mich 146; *Goodrich* v. *County of Kalamazoo* (1943), 304 Mich 442; *Township of Medina* v. *Perkins* (1882), 48 Mich 67, 72; *Seeger* v. *Village of Hart* (1910), 160 Mich 134; *Malloy* v. *Township of Walker* (1889), 77 Mich 448.

[13] It is not unknown for a draftsman to repeat a word in the same section and intend two different meanings. See *Guastello* v. *Citizens Mutual Insurance Company* (1968), 11 Mich App 120, 136. Thus, even if tort liability, as that term is used in the second sentence of § 7, means intentional and other tort liability as well as negligent tort liability, we are not inhibited from construing the first sentence of § 7 so as to preserve the constitutionality of the act.

And, if the words "tort liability" as used in the second sentence are also read as meaning only liability for negligence this would not necessarily preclude a judicial interpretation that act 170 does not, except as therein expressly provided, modify or restrict the State's pre-act 170 tort immunity. See *McDowell* v. *State Highway Commis-*

Section 9 authorizes governmental agencies to purchase "liability insurance" to protect governmental agencies and employees "against loss on account of any judgment secured against it, or them, arising out of any claim for personal injury or property damage."[14] There is no need to limit § 9 to the purchase of insurance covering governmental agency liability for negligence just because the first sentence of § 7 is construed to exempt only from liability for negligence. The purpose of insurance is to protect against liability, not nonliability. Furthermore, the second sentence of § 9,[15] providing that the purchase of insurance will not constitute "a waiver of any defense otherwise available to the governmental agency in the defense of the claim," suggests that insurance may be purchased in areas of doubtful liability.[16]

Section 10 states the procedure for bringing claims against the State and § 11 concerns limitations of action.[17]

Section 12 provides that "Claims under this act are subject to all of the defenses available to claims

sioner (1961), 365 Mich 268; Myers v. Genesee County Auditor (1965), 375 Mich 1, 8. At the time of the approval of act 170, the status of the State's immunity differed considerably from that of other governmental agencies such as municipal corporations (Williams v. City of Detroit [1961], 364 Mich 231), counties, townships and villages (Myers v. Genesee County Auditor [1965], 375 Mich 1).

[14] MCLA § 691.1409 (Stat Ann 1968 Cum Supp § 3.996[109]).

[15] MCLA § 691.1409 (Stat Ann 1968 Cum Supp § 3.996[109]).

[16] Moreover, municipal corporations and other governmental agencies have been liable for a long time by judicial decision for tortious conduct arising out of the performance of a proprietary function. Myers v. Genesee County Auditor, supra, p 9; Dohm v. Township of Acme (1958), 354 Mich 447. There is nothing in act 170 concerning such liability; but see § 13 (MCLA § 691.1413 [Stat Ann 1968 Cum Supp § 3.996(113)]) which eliminates the State's liability for injuries arising out of its performance of a proprietary function. Nevertheless, § 9 should and no doubt will be interpreted to permit purchase by governmental agencies other than the State of liability insurance for protection against tortious liability arising from the discharge of a proprietary function.

[17] MCLA §§ 691.1410, 691.1411 (Stat Ann 1968 Cum Supp §§ 3.996[110], 3.996[111]).

sounding in *tort* brought against private persons."[18] (Emphasis supplied.)  This section does not negative the interpretation of the first sentence of § 7 which I advocate.  Clearly, a defense that under pre-act 170 law would only be available in an action for a particular intentional or extrahazardous tort could not, by reason of § 12, be used to defend against an action for negligence under §§ 2 or 6 (defective condition of a highway or public building) or under § 5 (negligent operation of an automobile).  Without regard to whether the first sentence of § 7 is limited to liability for negligence, only those defenses available in negligence actions can be asserted where the gist of the action is negligence.

Section 13 eliminates the State's immunity from liability for damages arising out of the performance of a proprietary function,[19] a subject matter expressly dealt with in the title (see footnote 6).

If the decision of our Court in this case held, as I would hold, that the first sentence of § 7 exempts the defendant from liability for negligence, it would then be necessary for us to consider and decide whether the acts and omissions charged against the defendant are nevertheless actionable. Plaintiff contends that even if the first sentence of § 7 is read as exempting governmental agencies from liability for negligence, it may still recover because its amended complaint was grounded in nuisance and not in negligence.  In response the defendant asserts that the basis of the plaintiff's nuisance action is the alleged failure of the defendants to have exercised due care, *i.e.*, negligence and, thus, however the action is denominated, the plaintiff cannot recover.[20]

---

[18] MCLA § 691.1412 (Stat Ann 1968 Cum Supp § 3.996[112]).
[19] MCLA § 691.1413 (Stat Ann 1968 Cum Supp § 3.996[113]).
[20] *Cf. Royston* v. *City of Charlotte* (1936), 278 Mich 255, 260;

The common law of governmental immunity did not insulate governments from the classic nuisance action,[21] that is, an action for invasion of an interest in land.[22] Recovery from governmental defendants was also allowed for personal injuries suffered as a result of the defendant's "direct act or trespass" upon the plaintiff's lands[23] or upon the public way.[24] There is good reason to believe that the Michigan legislature did not by act 170 intend to create immunity in an area of the law where it did not exist before decision in *Williams* v. *City of Detroit* (1961), 364 Mich 231.[25] If that be the correct view, governmental agencies are still liable for the commission of classic nuisances or so-called direct trespasses causing loss suffered on or affecting a defendant's land or on the public way without regard to whether the act or omission causing the nuisance is intentional or negligent.

---

*Denny* v. *Garavaglia* (1952), 333 Mich 317, 329–332; *Dahl* v. *Glover* (1956), 344 Mich 639, 644; *Mechay* v. *City of Detroit* (1961), 364 Mich 576, 584 (CARR, J., dissenting); *Buckeye Union Fire Insurance Company* v. *State of Michigan* (1968), 13 Mich App 498, 503.

[21] *Ashley* v. *City of Port Huron* (1877), 35 Mich 296; *Northwest Home Owners Ass'n* v. *City of Detroit* (1941), 298 Mich 622; *Attorney General, ex rel. Township of Wyoming* v. *City of Grand Rapids* (1913), 175 Mich 503, 534.

[22] Generally, see Restatement of Torts, Second, Tentative Draft No 15 (1969), § 821D.

It has been said that "although there has been occasional careless usage of 'nuisance' to include almost anything unpleasant, harmful or disagreeable, it has no proper application in the law other than to" an invasion of rights common to all members of the public (public nuisance) or of a private interest in the use and enjoyment of land (private nuisance) and that the latter action "is always a tort against land, and the plaintiff's action must always be founded upon his interest in the land." Restatement of Torts, Second, Tentative Draft No 15 (1969), § 821A, pp 10, 11. See Prosser, Law of Torts (3d ed), § 87, pp 593, 594, and also cases cited in footnote 28.

[23] *Ferris* v. *Board of Education of Detroit* (1899), 122 Mich 315, 318; *Rogers* v. *Kent Board of County Road Commissioners* (on Rehearing) (1948), 319 Mich 661, 668, 671; *Herro* v. *Chippewa County Road Commissioners* (1962), 368 Mich 263.

[24] *Pound* v. *Garden City School District* (1964), 372 Mich 499. But, see *McDonell* v. *Brozo* (1938), 285 Mich 38, 43.

[25] See Baum, *Governmental Immunity in Michigan—Some Recent Developments,* 44 Mich St B J 37, 44 (1965).

Garbage dumps have been held to be nuisances.[26] The plaintiff points out that the defendant's garbage dump is a place to which the public is invited and also relies on cases allowing recovery on the theory of nuisance where personal injuries were suffered on the premises of the alleged wrongdoer.[27] Additionally, there is a substantial question in this case whether the acts or omissions charged against the defendant should, as the plaintiff strenuously contends, be regarded as constituting something more than ordinary negligence, *i.e.*, reckless, intentional or abnormally dangerous conduct.

To reconcile these at once both disparate and overlapping theories of tort liability and the superimposed legislative purpose to exempt governmental agencies from liability for negligence would involve an excursion into what Dean Prosser warns is an "impenetrable jungle."[28] Having in mind that this dissenting opinion is not precedential, I will heed his warning.

---

[26] See *Smith* v. *City of Ann Arbor* (1942), 303 Mich 476, where the operation of a dump was regulated by an injunction. See, generally, 18 McQuillin, Municipal Corporations (3d ed rev) § 53.50, p 262.

[27] *Bluemer* v. *Saginaw Central Oil & Gas Service, Inc.* (1959), 356 Mich 399, 410–416; *Munson* v. *County of Menominee* (1963), 371 Mich 504, 515. But see *Pound* v. *Garden City School District, supra,* p 502; *Royston* v. *City of Charlotte, supra; Watson* v. *School District of the City of Bay City* (1949), 324 Mich 1, 13 (Dethmers, J.); *Daniels* v. *Board of Education of City of Grand Rapids* (1916), 191 Mich 339, 355. *Cf. Awad* v. *McColgan* (1959), 357 Mich 386.

[28] Prosser, Law of Torts (3d ed), § 87, p 592; similarly see *Awad* v. *McColgan, supra.*

See Prosser, Law of Torts (3d ed), § 125, pp 1009, 1010, n 29–32, discussing the "nuisance" exception to governmental immunity, also 2 Harper and James, the Law of Torts, § 29.6, pp 1626, 1627, n 46, 47; 18 McQuillin, Municipal Corporations (3d ed rev), §§ 53.47–53.50 a, 53.112; *Mechay* v. *City of Detroit, supra; Watson* v. *School District of the City of Bay City, supra; Daniels* v. *Board of Education of City of Grand Rapids, supra; Williams* v. *Primary School District #3, Green Township* (1966), 3 Mich App 468; *Buckeye Union Fire Insurance Company* v. *State of Michigan, supra.*